# SAMUEL L. RICHARDSON, HUMAN RIGHTS COMMISSIONER, v. SCHOOL BOARD OF INDEPENDENT SCHOOL DISTRICT NO. 271.

210 N. W. 2d 911.

August 3, 1973—No. 44034.

*Kingsley D. Holman,* for petitioner.

*Warren Spannaus,* Attorney General, *Curtis Forslund,* Solicitor General, and *Gary C. Reiter,* Special Assistant Attorney General, for respondent.

*Peterson, Popovich, Knutson & Flynn,* and *Peter S. Popovich* and *Ivars J. Krafts,* for Minnesota School Boards Association, amicus curiae.

TODD, JUSTICE.

Independent School District No. 271, respondent below, seeks a writ of prohibition prohibiting the commissioner of human rights and a hearing examiner of the Department of Human Rights from proceeding with a hearing on an alleged violation of our human rights act, Minn. St. c. 363, and including in said hearing a class of persons who have not filed complaints with the commissioner within the 6-month period provided by the statute of limitations. The parties stipulate that only one person has filed a complaint. The writ of prohibition is discharged in part and made absolute in part.

Respondent school district had a policy requiring all pregnant teachers to resign at the fifth month of pregnancy. On April 2, 1971, Mrs. Peggy Samuelson, charging party in the initial proceedings, tendered her resignation as a result of her pregnancy, the voluntariness of said resignation not being before us at this time. The Minnesota Department of Human Rights has promulgated guidelines, effective June 22, 1971, regarding sex discrimination under our act, which had been amended in 1969 to prohibit discriminatory practices because of sex. The guidelines specifically made it an unfair discriminatory practice for an employer to deny pregnant females maternity leave of absence.

On September 13, 1971, within the 6-month statutory period of limitations,[1] Mrs. Samuelson filed a charge with the commissioner alleging discriminatory practices by the respondent school district.

Following investigation, the commissioner on July 13, 1972, issued a complaint against respondent school district which included the complaint of the charging party, Mrs. Samuelson, and also included the following classes of persons: (a) Female employees in full or part-time service to respondent who were denied maternity leave from and after June 6, 1969;[2] (b) female employees in full or part-time service to respondent who were denied maternity leave prior to June 6, 1969, but who sought or were returned to full or part-time employment from and after June 6, 1969.

The writ sought by the school district seeks to exclude these last two classifications from consideration in whole or in part at the hearing on the charge filed by Mrs. Samuelson. The record does indicate that at some time, the exact date not being disclosed, following the filing of Mrs. Samuelson's charge, the school board changed its policy with reference to maternity leave to conform with the guidelines issued by the Department of Human Rights.

■ Our court has repeatedly held that a writ of prohibition is an extraordinary writ issuing out of this court to prevent inferior courts or tribunals from exceeding their jurisdiction. The grounds for issuance of the writ are generally stated as follows: (1) The inferior court or tribunal is about to exercise judicial or quasi-judicial power; (2) the exercise of such power is unauthorized by law; and (3) it will result in injury for which there is no other adequate remedy. State v. Hartman, 261 Minn. 314, 112 N. W. 2d 340 (1961).

There is no dispute raised by the parties as to the first element.

---

[1] Minn. St. 363.06, subd. 3.

[2] The date of the 1969 amendments to the human rights act which prohibit discriminatory practices based on sex. L. 1969, c. 975.

However, the school district does assert that the commissioner lacks jurisdiction over the parties and the subject matter because (a) a class action may not be maintained under Minn. St. c. 363; (b) the parties, other than Mrs. Samuelson, have not complied with the statutory prerequisite of filing a charge within 6 months of the violation pursuant to Minn. St. 363.06, subd. 3; and (c) the guidelines of the commissioner relating to discrimination based on sex could not have retroactive effect. The parties agree that if the commissioner has no right to bring a class action, the writ should be made absolute.

■ The instant case presents the first attempt by this court to determine the commissioner's right to commence class actions. While there is an absence of both Minnesota and foreign case law on point,[3] there is sufficient statutory language to infer that this right is within the policy objectives outlined in § 363.12, subd. 1.[4]

---

[3] Federal cases allowing class actions under the analogous Title VII of the 1964 Civil Rights Act, 42 USCA, §§ 2000e to 2000e-15, are unavailing since in that judicial setting petitioners are aided by Rule 23, Federal Rules of Civil Procedure. See, Sprogis v. United Air Lines, Inc. 444 F. 2d 1194 (7 Cir. 1971), and cases cited therein. See, also, Note, 84 Harv. L. Rev. 1109, 1218.

[4] Minn. St. 1971, § 363.12, states in part as follows: "Subdivision 1. As a guide to the interpretation and application of this chapter, be it enacted that the public policy of this state is to secure for individuals in this state, freedom from discrimination because of race, color, creed, religion, or national origin, in connection with employment, housing and real property, public accommodations, public services, and education. It is also the public policy of this state to secure for individuals in this state, freedom from discrimination because of sex in connection with employment. Such discrimination threatens the rights and privileges of the inhabitants of this state and menaces the institutions and foundations of democracy. It is also the public policy of this state to protect all persons from wholly unfounded charges of discrimination."

"Subd. 2. * * * The opportunity to obtain employment without discrimination because of sex is also hereby recognized as and declared to be a civil right."

Discriminatory practices are a fact of life. While they may apply on an individual basis, their effect is much broader and generally involve a class of persons outside of the particular individual.[5] It seems unreasonable to interpret the appropriate legislation which has as its purpose eliminating discriminatory practices as requiring the commissioner to wait for individual complaints and proceed on a case-by-case basis. We cannot, therefore, agree with the school district's view that elimination of discriminatory practices can be accomplished without the aid of class suits. Rather, c. 363 vests in the commissioner authority to formulate a coherent program, something he could not accomplish if he had to rely on individual grievances.[6]

On such a close question of statutory interpretation, we must rely on the dictates of § 363.11, which states that the provisions of c. 363 are to be liberally construed to accomplish the purposes of the state act which are set out in § 363.12, and which include the public policy of securing equal employment opportunity. Moreover, to construe Minn. St. 1971, § 363.071, subd. 2, as denying the right of the commissioner to obtain relief for a class of persons affected by discriminatory practices simply because that provision refers to a "charging party," disregards the mandates of other statutes within this chapter previously mentioned and evidences a strict interpretation to which we cannot adhere.[7]

■ Pursuant to the applicable statutes, there are two methods of instituting an action before the Department of Human Rights.

---

[5] One of the prime reasons that state antidiscrimination agencies have been so ineffectual lies in the fact that they tend to become "complaint taking bureaus." This approach is a wholly inadequate substitute for vigorous antidiscrimination enforcement. See, *The Symposium on Employment Discrimination*, 14 Buffalo L. Rev. 1; Bonfield, *State Civil Rights Statutes: Some Proposals*, 49 Iowa L. Rev. 1067.

[6] See, Note, 74 Harv. L. Rev. 526, 530.

[7] L. 1973, c. 229, § 9, amended Minn. St. 1971, § 363.071, subd. 2, by deletion of the term "charging party" and substitution of the term "an aggrieved party, who has suffered discrimination."

The first contemplates the filing of a charge by an "aggrieved person" pursuant to Minn. St. 363.06, subd. 1, which charge blossoms into a filed complaint issued by the commissioner if he determines that probable cause exists to credit the allegations contained in the charge. Minn. St. 1971, § 363.06, subd. 4(2). The second method provides for a commissioner-initiated complaint based on reasonable cause to believe that a person is engaging in unfair discriminatory practice. §§ 363.05, subd. 1(9), and 363.06, subd. 2.[8]

Of the many states which have established departments or commissions of this type in an effort to eliminate and prevent discrimination, only about 10 states provide statutory procedures whereby the antidiscrimination agency itself may initiate the action,[9] as may be done in Minnesota. While it has been suggested that the underlying rationale of such procedure is uncertainty that private individuals can be relied on to file the necessary complaint due to the time and expense involved and their fear of reprisals,[10] we believe this view to be overly restrictive. The 1967 amendments to c. 363 which allow the commissioner to file his own complaint were obviously intended to bolster the previously ineffectual state act dealing with discriminatory prac-

---

[8] See, Auerbach, *The 1967 Amendments to the Minnesota State Act Against Discrimination, and the Uniform Law Commissioners' Model Anti-Discrimination Act: A Comparative Analysis and Evaluation,* 52 Minn. L. Rev. 231, 313, 318, 321.

[9] These states include Massachusetts, Ohio, Rhode Island, Pennsylvania, Washington, Connecticut, Colorado, Missouri, Oklahoma, and Minnesota. See, Dyson, *Commission Enforcement of State Laws Against Discrimination: A Comparative Analysis of the Kansas Act,* 14 Kan. L. Rev. 29, 33, note 26.

[10] See, *The National Conference of Commissioners on Uniform State Laws, Model Anti-Discrimination Act,* Comment to Section 702(6); Girard & Jaffe, *Some General Observations on Administration of State Fair Employment Practice Laws,* 14 Buffalo L. Rev. 114; Dyson, supra, 35.

tices.[11] The act now allows the commissioner of human rights to issue complaints against persons engaging in discriminatory practices regardless of whether a charge is filed by a "charging party." Minn. St. 1971, §§ 363.05, subd. 1(9), and 363.06, subd. 2. Therefore, the commissioner may seek a cease and desist order from the agency on his own initiative. § 363.071, subd. 2. This remedy in itself seeks relief for a class of individuals who have been the object of discriminatory practices. By close analogy, the commissioner has the alternative of seeking relief for a defined class of similarly situated persons by issuing a complaint in their behalf. While the instant case presents a factual situation wherein the defined class is represented by a "representative party," this is not a necessary prerequisite under the statute.

■ While class actions are maintainable pursuant to Minn. St. 1971, §§ 363.05, subd. 1(9), 363.06, subd. 2, and 363.071, subd. 2, by necessity, enforcement can only be on an individual case-by-case method. If the hearing examiner in this case were to determine that the school district has engaged in an unfair discriminatory practice, he would promulgate relief accordingly. Thereafter, any party wishing to be included in the previously defined class would be required to make an appearance before the commissioner and prove that she did indeed fall within the limitations of the class as defined by the commissioner's order.

---

[11] L. 1967, c. 897. For the ineffectual nature of the previous act, see Hill, *Twenty Years of State Fair Employment Practice Commissions: A Critical Analysis with Recommendations,* 14 Buffalo L. Rev. 22, 51. Between 1955 and 1962, the Minnesota commission handled only 205 cases, of which 81 were dismissed for no probable cause, 16 for other reasons, and only 32 complaints were judged to be valid. For an analysis of the Minnesota act and its amendments, see Auerbach, *The 1967 Amendments to the Minnesota State Act Against Discrimination and the Uniform Law Commissioners' Model Anti-Discrimination Act: A Comparative Analysis and Evaluation,* 52 Minn. L. Rev. 231, and Auerbach, *The 1969 Amendments to the Minnesota State Act Against Discrimination and the Uniform Law Commissioners' Model Anti-Discrimination Act: A Comparative Analysis and Evaluation,* 55 Minn. L. Rev. 259.

Such an individual thus becomes a "charging party" within the dictates of Minn. St. 1971, § 363.071, subd. 2.

■ Having determined the commissioner is entitled to bring a class action, we must necessarily determine whether the scope of the class action initiated by the commissioner is permissible under our statute. This necessarily involves an interpretation of the effect of Minn. St. 363.06, subd. 3, which provides:

"A charge of an unfair discriminatory practice must be filed within six months after the occurrence of the practice."

The commissioner contends that the policy of the school board discriminating against pregnant teachers was a continuing practice up to the time the board agreed to adopt the commissioner's guidelines, that any teachers forced to resign following the 1969 amendment are subject to a continuing discriminatory practice, and that the statute of limitations does not apply. The effect of such an interpretation would be to virtually eliminate the statute of limitations. We are not prepared to so do. We interpret the occurrence of the practice as set forth in this case to mean a discharge or required resignation, the date of which commences the statutory period of limitations. In addition, if a leave of absence were given, the statutory period would commence at the termination date of the leave of absence. These events can be distinguished from a layoff where there is a continuing expectancy of rehiring, and, until the occurrence of an event which precludes such expectancy, the statutory period would not commence.

The commissioner here seeks to bring a class action for all persons properly included in the class affected by the discriminatory practice. The commissioner's right can be no broader than the rights of the members of the class he represents. Since his complaint was not issued until July 13, 1972, only those persons whose rights had been affected by the discriminatory practices within 6 months prior to July 13, 1972, may be properly included in the class action.

The record indicates that at the time of the submission of this

matter to the court, the human rights commissioner had not adopted any rules of procedure relative to class actions. We are unaware of any subsequent actions of the commissioner. If regulations have not been adopted, it will be necessary for the commissioner to adopt appropriate regulations relative to class actions pursuant to Minn. St. 15.0412 prior to proceeding any further on this matter, and the commissioner must necessarily allow adequate time between the adoption of the regulations and the hearing of testimony in the instant case to avoid any prejudice to the parties affected by the action.

The extent of the classification having been determined as stated above, the effective date of the promulgated guidelines of the commissioner, issued June 22, 1971, is not material to the disposition of this issue. However, since the matter is involved in the individual case of the charging party, Mrs. Samuelson, we note that the position of the school district that Mrs. Samuelson's complaint is barred since she resigned prior to the commissioner's promulgation of the guidelines is without merit since the rights accrued at the time of the passage of the statute and the guidelines merely reflect an interpretation of the statute.

The writ of prohibition is discharged as to that portion of the class action initiated by the commissioner, which includes in the class action persons whose rights were affected by an event occurring within 6 months prior to July 13, 1972, and the writ is made absolute as to the portion of the commissioner's action purporting to include in the class any persons whose rights were affected by a discriminatory practice occurring more than 6 months prior to July 13, 1972.

KELLY, JUSTICE (dissenting in part).

I dissent to that portion of the majority opinion which would grant to the commissioner of human rights the power under Minn. St. c. 363 to bring class actions for persons who have not filed a charge of discrimination with the commissioner pursuant to the statute for the purpose of recovering compensatory or

punitive damages on their behalf. The legislation itself does not specifically authorize such class suits.

This court has often observed that the jurisdiction of an administrative agency in this state is derived only from the legislation creating it.

"Jurisdiction of an administrative agency consists of the powers granted it by statute. Lack of statutory power betokens lack of jurisdiction. It is therefore well settled that a determination of an administrative agency is void and subject to collateral attack where it is made either without statutory power or in excess thereof." State ex rel. Spurck v. Civil Service Board, 226 Minn. 253, 259, 32 N. W. 2d 583, 586 (1948).

The jurisdiction of the Department of Human Rights therefore should be limited to the powers conferred upon it in Minn. St. c. 363. The duties and powers of the commissioner are enunciated in Minn. St. 363.05, of which subd. 1(9) empowers him to "issue complaints, receive and investigate charges alleging unfair discriminatory practices, and determine whether probable cause exists for hearing." The procedure for the issuance of complaints regarding grievances is set forth in § 363.06, which provides in part:

"Subdivision 1. Any person aggrieved by a violation of this chapter may file a verified charge with the commissioner or his designated agent * * *.

"Subd. 2. Whenever the commissioner has reason to believe that a person is engaging in an unfair discriminatory practice, the commissioner *may* issue a complaint.

"Subd. 3. A charge of an unfair discriminatory practice must be filed within six months after the occurrence of the practice.

"Subd. 4. When a charge has been filed, the commissioner shall * * * make a determination as to whether or not there is probable cause to credit the allegation of unfair discriminatory practices, and

* * * * *

"(2) If the commissioner shall determine after investigation that probable cause exists to credit the allegations of unfair discriminatory practices, the commissioner *shall* issue a complaint \* \* \*." (Italics supplied.)

The statute therefore empowers the commissioner to initiate complaints against persons for alleged discriminatory practices in two instances: (1) After investigation shows that a charge of discrimination by a person is credible, and, (2) when the commissioner himself discovers such practices. The charge of Mrs. Samuelson is properly being pursued under the first of these alternative methods. I cannot agree, however, that the statutory authorization to the commissioner to issue complaints on his own initiative enables him to seek adjudication of the rights of others with similar interests by means of a class action.

There is nothing in the statute which expressly or impliedly gives the commissioner of human rights the power to bring this type of class action. The purpose of allowing the commissioner to initiate a complaint regardless of the non-filing of a charge of discrimination is to eliminate such practices by cease and desist orders and not to seek redress for those affected by it. Apparently the legislature thought this type of class action would be effective in eliminating discriminatory practices. Thus, this objective can be accomplished without the use of a class suit to recover damages on behalf of non-charging persons. An aggrieved person who wishes redress for unfair discriminatory practices is required to bring his claim within 6 months of the practice. To overlook this requirement merely because the commissioner himself took the initiative in filing a complaint frustrates the purpose for the limitation provision. In addition, Minn. St. 363.071, subd. 2, authorizes compensatory and punitive damages to be paid only to a "charging party"[1] who is defined with

---

[1] Minn. St. 363.01, subd. 22, provides: "'Charging party' means a person filing a charge with the commissioner or his designated agent pursuant to section 363.06, subdivision 1."

particularity. The awarding of compensatory or punitive damages to a "charging party" or even the prospect thereof should have a prophylactic effect upon all employers. This effect, along with the commissioner's powers to issue complaints for discriminatory practices, should give the commissioner adequate weapons to enforce and carry out the policies of the statute without resorting to class actions on behalf of employees who are not "charging parties" to recover on their behalf compensatory and punitive damages.

Furthermore, to authorize the commissioner of human rights to maintain class actions based on the broad legislative policy of eliminating discrimination in the state is unwarranted. Chapter 363 contains no guidelines for the class action such as are spelled out in Rule 23, Rules of Civil Procedure. To allow the commissioner to derive authority to bring class actions because of the general policy statements contained in the statute may lead to the use of class actions by other administrative agencies when not expressly provided for by the statute. I cannot believe the legislature intended such a result by outlining the purpose of the act in Minn. St. 363.12.

PETERSON, JUSTICE (dissenting in part).

I concur in the dissent of Mr. Justice Kelly.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.