MINNESOTA MINING AND MANUFAC-
TURING COMPANY, petitioner,
Respondent-Appellant,

v.

STATE of Minnesota, by William L.
Wilson, Department of Human
Rights, Appellant-Respondent.

In the Matter of an Appeal by the STATE
of Minnesota BY William L. WILSON,
Commissioner, Department of Human
Rights, from a Decision of a Hearing
Examiner.

Nos. 49079, 49137.

Supreme Court of Minnesota.

Aug. 10, 1979.

Oppenheimer, Wolff, Foster, Shepard & Donnelly, Thomas P. Kane, Robert R. Reinhart, Jr., and Keith E. Goodwin, St. Paul, for respondent-appellant.

Warren Spannaus, Atty. Gen., and Richard B. Allyn, Sol. Gen., St. Paul, Erica Jacobson, Sp. Asst. Atty. Gen., St. Paul, for appellant-respondent.

Peterson, Popovich, Knutson & Flynn and Thomas M. Sipkins, St. Paul, for Ind. Sch. Dist. No. 547 et al.

Gary Green, St. Paul, for Minn. Ed. Assn.

ROGOSHESKE, Justice.

Minnesota Mining and Manufacturing Company (3M) and the Minnesota Department of Human Rights (department) both appeal from the judgment of the district court in a sex discrimination case arising out of 3M's exclusion from its income maintenance plan (IMP) of women absent from work due to pregnancy. The issues raised on appeal are:

(1) Does the exclusion of pregnancy-related absences from 3M's IMP constitute sex discrimination prohibited by the Minnesota Human Rights Act?

(2) Does the Federal Employee Retirement Income Security Act (ERISA) pre-empt application of the Minnesota Human Rights Act to 3M's IMP?

(3) Did the district court correctly define the class of women represented by the Department of Human Rights?

We hold that the exclusion of pregnancy-related absences from an otherwise comprehensive income maintenance plan is per se sex discrimination within the meaning of the Minnesota Human Rights Act, Minn.St. c. 363, both before and after the 1977 amendments to that act. We further hold that ERISA does not pre-empt the Minnesota Human Rights Act from prohibiting unfair discrimination and that the district court correctly defined the class of women represented by the department in this action. We accordingly affirm the decision of the district court, but we direct that judgment also be granted to the department on behalf of Judith Troye, the individual who originally filed the charge of discrimination. We remand the case to the hearing examiner solely to determine the members of the class and the amount of damages.

On February 6, 1974, Troye filed with the department a charge of discrimination[1]

1. Minn.St. 363.06, subd. 1, provides: "Any person aggrieved by a violation of this chapter may file a verified charge with the commissioner or his designated agent * * *."

against her employer, 3M. She alleged that 3M denied her and other female employees monetary compensation under its comprehensive income maintenance plan for disabilities related to pregnancy. The department investigated the allegations in the charge, and the commissioner found probable cause to believe that 3M was violating the Minnesota Human Rights Act. On March 2, 1977, after attempts at conciliation had failed, the commissioner issued a class action complaint.

The matter was assigned to a hearing examiner. The department and 3M each moved for summary judgment, and the hearing examiner issued her decision on September 16, 1977. She certified the case as a class action on behalf of all present or former female employees of 3M in Minnesota who were on pregnancy leave of absence from a salaried position at 3M at any time between August 6, 1973, and December 31, 1974. She granted judgment for the department on behalf of the class, on the basis that 3M engaged in illegal sex discrimination. She also granted judgment for 3M for the period on and after January 1, 1975, on the basis that ERISA pre-empted the Minnesota Human Rights Act from applying to 3M's employee benefit plan after that date.

The department and 3M each filed a petition in Ramsey County District Court for judicial review pursuant to Minn.St. 15.0424 and 363.072. In an order issued May 25, 1978, the district court affirmed the conclusion that 3M engaged in illegal sex discrimination, reversed the hearing examiner's ruling that ERISA pre-empted the Minnesota Human Rights Act, and modified the class to consist of all present or former employees of 3M in Minnesota who were on a pregnancy leave of absence from a salaried position at 3M at any time on or after September 2, 1976, to March 25, 1978, the date of the order. 3M and the department have each appealed to this court from the judgment entered in district court.

The 1977 version of the Minnesota Human Rights Act defines "sex" as follows:

> "'Sex' includes, but is not limited to, pregnancy, childbirth, and disabilities related to pregnancy or childbirth." Minn.St. 363.01, subd. 29.

The 1977 version delineates various unfair discriminatory practices, including:

> "Except when based on a bona fide occupational qualification, it is an unfair employment practice:
>
> \*     \*     \*     \*     \*     \*
>
> "(2) For an employer, because of \*   \* sex \*   \*   \*,
>
> \*     \*     \*     \*     \*     \*
>
> "(c) to discriminate against a person with respect to his hire, tenure, compensation, terms, \*   \*   \* or privileges of employment.
>
> \*     \*     \*     \*     \*     \*
>
> "(5) For an employer \*   \*   \* with respect to all employment related purposes, including receipt of benefits under fringe benefit programs, not to treat women affected by pregnancy, childbirth, or disabilities related to pregnancy or childbirth, the same as other persons who are not so affected but who are similar in their ability or inability to work." Minn.St. 363.03, subd. 1(2, 5).

■ 3M's IMP obviously violates the current version of the Minnesota Human Rights Act. 3M argues, however, that its IMP did not run afoul of the pre-1977 act. Prior to June 3, 1977, the effective date of the 1977 amendments, the Minnesota Human Rights Act prohibited discrimination in employment on the basis of sex, but did not specifically mention pregnancy and childbirth. Minn.St.1976, § 363.03, subd. 1. 3M argues, therefore, that it was not discriminating on the basis of sex when it excluded pregnancy-related absences from its IMP prior to June 3, 1977. 3M contends that the 1969 Minnesota Legislature, which originally enacted the sex discrimination provision, adopted it from a similar provision in Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e–2(a), and intended the same interpretation of sex discrimination as that given Title VII by the Equal Employment Opportunity Commission (EEOC). At

that time, the EEOC had construed Title VII as not reaching the exclusion of pregnancy-related absences from income maintenance plans. 3M further contends the pregnancy exclusion is reasonable, exhibits no intent to harm women, and, in fact, has no adverse effect upon women.

We believe, however, as the department argues, that the 1977 amendments to the Minnesota Human Rights Act clarified rather than changed existing state law. The 1977 amendments were prefaced by the following description: *"An act relating to human rights; clarifying the scope of sex discrimination * * *."* L.1977, c. 408. The impetus for the 1977 amendments was the United States Supreme Court's decision in *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), which held by a 6 to 3 divided court that the exclusion of pregnancy-related disabilities from G.E.'s disability plan was not sex discrimination under Title VII. The sponsors of the 1977 amendments emphasized that the legislation was intended to merely clarify that the Minnesota sex discrimination provision was not to have the same interpretation as Title VII after the *Gilbert* decision.[2] For instance, Representative Ann Wynia, immediately prior to the passage of the 1977 amendments bill, responded to a question on the House floor, as follows:

> " * * * We know the interpretation that has been given to the prohibition on the discrimination of sex in the Minnesota Human Rights Act but in light of this United States Supreme Court decision, let's just clarify the meaning consistently with the interpretation we have had in the past."

We note two additional factors which lead us to this conclusion. First, the origin of the original sex discrimination provision enacted in 1969 (L.1969, c. 975) is unclear. Contrary to 3M's contention that Title VII was the model for our statute, at least one commentator has suggested that the Minnesota Human Rights Act owes its primary heritage to the Uniform Law Commissioners' Model Anti-Discrimination Act,[3] which the Minnesota Legislature "had before it" at the time it adopted the antidiscrimination laws, rather than Title VII. See, Auerbach, *The 1967 Amendments to the Minnesota State Act Against Discrimination and the Uniform Law Commissioners' Model Anti-Discrimination Act: A Comparative Analysis and Evaluation,* 52 Minn.L. Rev. 231, 232, 245. See, also, Auerbach, *The 1969 Amendments to the Minnesota State Act Against Discrimination and the Uniform Law Commissioners' Model Anti-Discrimination Act: A Comparative Analysis and Evaluation,* 55 Minn.L.Rev. 259, 260.

Second, it is quite likely that the legislature which enacted the original sex discrimination provision in 1969 did not have in mind a particular application of the provision but instead contemplated that the department would interpret the provision as circumstances arose. The department appears to have consistently treated pregnancy classifications as sex based and has held prior to the 1977 amendments that discrimination on the basis of pregnancy is sex discrimination.[4] On March 23, 1971, a hearing examiner of the department concluded

2. The *Gilbert* decision has been judicially disapproved by all but one state that has dealt with the exclusion-of-pregnancy-benefits issue subsequent to *Gilbert,* usually in a context which is virtually identical to the sex discrimination language in Title VII. See, *Quaker Oats Co. v. Cedar Rapids Hum. R. Com'n,* 268 N.W.2d 862 (Iowa 1978); *Mass. Elec. v. Mass. Com'n Against Discrim.,* —— Mass. ——, 375 N.E.2d 1192 (1978); *Castellano v. Linden Board of Education,* 158 N.J.Super. 350, 386 A.2d 396 (1978); *Gas Co. v. Appeal Board,* 41 N.Y.2d 84, 390 N.Y.S.2d 884, 359 N.E.2d 393 (1976); *Anderson v. U. Bucks Co. A. Vo. T. Sch.,* 30 Pa.Cmwlth. 103, 373 A.2d 126 (1977); *Good-*

*year Tire & Rubber v. Dept. of Industry,* 87 Wis.2d 56, 273 N.W.2d 786 (1978). Contra, *Narragansett Elec. v. R. I. Com'n for Hum. R.,* R.I., 374 A.2d 1022 (1977).

3. National Conference of Commissioners on Uniform State Laws, Uniform Law Commissioners' Model Anti-Discrimination Act (1966).

4. This factor distinguishes this case from *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), where the majority placed great weight on the fact that the EEOC's position conflicted with its earlier pronouncements.

that a county welfare board violated the Minnesota Human Rights Act by terminating a female employee when she took an unauthorized leave of absence for maternity purposes. *State v. Crow Wing County Welfare Board*, 3 Empl.Pract. Guide (CCH) ¶ 24,399.15. This interpretation by the agency charged with enforcing the statute is, of course, entitled to great weight. See, *Steere v. State, Dept. of Public Welfare*, 308 Minn. 390, 243 N.W.2d 112 (1976). We hold that the legislature in adopting the 1977 amendments did not intend to alter the scope of sex discrimination under the Minnesota Human Rights Act. See, e. g., *Brotherhood of Ry. & Steamship Clerks, etc. v. State*, 303 Minn. 178, 229 N.W.2d 3 (1975).

· [2] The 3M IMP was initiated for the purpose of compensating all disabled salaried employees during the period of disability. By denying coverage to pregnancy-related disabilities, 3M is not fulfilling the purported purpose of the plan. 3M's plan covers voluntary cosmetic surgery and injuries resulting from voluntary participation in sports, but does not cover unforeseen and involuntary complications of pregnancy, such as ectopic (tubal) pregnancy, toxemia, or miscarriage, or, for that matter, unplanned pregnancies. It seems clear that 3M's plan reflects traditional sexual role stereotypes. Women in their childbearing years are viewed merely as temporary members of the labor force who, as such, do not need income security, since they are most probably supplementing their husbands' incomes and will eventually quit their jobs to become mothers. Since insuring for pregnancy disabilities increases the cost of the plan, pregnancy coverage is simply deleted. If women are to be treated equally, such plans must be designed to insure identical security for women and for men from medical disabilities which may interrupt their income flow. Since only women face the risk of becoming pregnant, excluding only pregnancy-related disabilities from an otherwise comprehensive income maintenance plan is per se sex discrimination. A woman should be no more burdened than a man if· she chooses to combine the roles of parent and employee, simply because the woman must bear the child.

■ 3M argues that ERISA pre-empts application of the Minnesota Human Rights Act after January 1, 1975, the effective date of ERISA's pre-emption provision, because Congress unmistakably ordained pre-emption. See, *Florida Avocado Growers v. Paul*, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963). 29 U.S.C.A. § 1144(a), of ERISA provides in part:

"* * * [T]he provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan * * *."

If "relate" is read broadly, any state law, with minor exceptions not here relevant, which in any way impinges on an employee benefit plan would be pre-empted, including state antidiscrimination laws. 29 U.S.C.A. § 1144(d), of ERISA provides, however, that "[n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States * * * or any rule or regulation issued under any such law." The department argues, and the district court held, that this provision preserves intact Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e to 2000e–17, and that Title VII, in turn, expressly preserves state antidiscrimination laws. We agree.

42 U.S.C.A. § 2000e–7, provides:

"Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter."

42 U.S.C.A. § 2000h–4, provides:

"Nothing contained in any title of this Act shall be construed as indicating an intent on the part of Congress to occupy

the field in which any such title operates to the exclusion of State laws on the same subject matter, nor shall any provision of this Act be construed as invalidating any provision of State law unless such provision is inconsistent with any of the purposes of this Act, or any provision thereof."

The majority of the cases brought to our attention where other courts have faced the pre-emption issue hold that state antidiscrimination laws are not pre-empted by ERISA. *Bucyrus-Erie Co. v. Dept. of Industry, etc.*, 453 F.Supp. 75 (E.D.Wis.1978), affirmed 599 F.2d 205 (7 Cir. 1979); *Gast v. State*, 36 Or.App. 441, 585 P.2d 12 (1978); *Goodyear Tire & Rubber Co. v. Dept. of Industry*, 87 Wis.2d 56, 273 N.W.2d 786 (1978). Contra, *Perval Industries Inc. v. State*, 468 F.Supp. 490 (D.Conn.1978), affirmed 603 F.2d 214 (2 Cir. 1979). We adopt the majority position and hold that Congress, in adopting ERISA, did not intend to pre-empt the operation of state antidiscrimination laws such as the Minnesota Human Rights Act. To hold otherwise would ignore the important role that Congress preserved for state antidiscrimination laws under Title VII. For example, Title VII prohibits an employer from discriminating on the basis of race only if that employer has 15 or more employees. 42 U.S. C.A. § 2000e(b). Only state legislation prohibits racial discrimination by employers of fewer than 15 employees. We cannot believe that Congress intended to create a regulatory void where discrimination by such employers could not be prohibited by the states any time ERISA is involved. Title VII relies on state antidiscrimination laws as a part of its statutory scheme, and ERISA, which expressly preserves federal statutes such as Title VII, impliedly preserves state laws which are integrally related to such federal statutes. Given the congressional policy favoring state antidiscrimination statutes, we will not presume preemption by an unrelated statute absent a clear expression that Congress specifically intended pre-emption of state antidiscrimination laws.

The district court ruled that the class in this case ought to include claims back to September 2, 1976. The ruling was based upon our decision in *Richardson v. School Board of Ind. Dist. No. 271*, 297 Minn. 91, 98, 210 N.W.2d 911, 916 (1973), that "only those persons whose rights had been affected by the discriminatory practices within 6 months prior to [the date of the commissioner's complaint] may be properly included in the class action." September 2, 1976, was 6 months prior to the date of the commissioner's complaint in this case.[5] We hold that *Richardson* is controlling here and that the district court correctly defined the class of plaintiffs represented by the department.

The department attempts to distinguish *Richardson* to support the holding of the hearing examiner that the class ought to include persons with claims back to August 6, 1973, the date 6 months prior to Troye's charge. The original administrative charge which preceded the commissioner's complaint in *Richardson* did not include the words "and others similarly situated," whereas Troye's charge did. The department, therefore, argues that 3M had notice that a class action was involved, rather than merely an individual charge of discrimination. Our decision in *Richardson*, however, holds that the time limitation provision of the Minnesota Human Rights Act is jurisdictional and not merely for the purpose of giving notice. A person has no statutory basis for bringing a lawsuit raising claims under the Human Rights Act unless he has filed a charge as to those claims within 6 months of the date he was last personally affected by the practice complained of. §§ 363.06, subd. 3, and 363.14. When the commissioner's power to institute litigation has ripened through the processing of the required charge, then the law recognizes an exception to the general rule and permits the commissioner to sue not only on behalf of the charging party but also on behalf of

---

5. Minn.St. 363.06, subd. 3, provides: "A charge of an unfair discriminatory practice must be filed within six months after the occurrence of the practice."

others whose rights to file their own charges have not expired.

The district court apparently inadvertently excluded Judith Troye, the individual who originally filed the charge of discrimination in 1974, when it modified the class of plaintiffs entitled to judgment to consist of "all present or former female salaried employees of 3M in Minnesota who were on a pregnancy leave of absence from a salaried position at 3M at any time on or after September 2, 1976 to date." Troye, of course, is entitled to judgment. She cannot be prejudiced by the state's delay in filing the complaint.

The judgment of the district court is affirmed, except that the case is remanded to the district court with directions to enter judgment for the Department of Human Rights on behalf of Troye, whereupon the case is remanded to the hearing examiner for a determination of the members of the class and the amount of damages.

Affirmed as modified and remanded.

OTIS and TODD, JJ., took no part in the consideration or decision of this case.