Kay CARLSON, et al., and Diane
Achter, et al., Intervenors,
Respondents,

v.

INDEPENDENT SCHOOL DISTRICT
NO. 623, et al., Independent School District No. 270, Petitioners, Appellants,

Independent School District No. 14,
Independent School District No.
704, Respondents,

Independent School District No. 276, Independent School District No. 482, Independent School District No. 454, Petitioners, Appellants.

No. C9–84–2077.

Supreme Court of Minnesota.

Aug. 8, 1986.

Mark P. Wine, Kathleen Hvass Sanberg and John C. Goodnow, Minneapolis, for Carlson, et al.

Lorraine S. Clugg, Minneapolis, for ISD # 270.

Susan J. Schoell and Thomas M. Sipkins, St. Paul, for ISD # 283.

Pamela R. Saunders, Minneapolis, for ISD # 276.

Peter Vogel, Little Falls, for ISD # 482.

John M. Giblin, Minneapolis, for ISD # 14.

Gerald A. Pommerville, Duluth, for ISD # 704.

Richard D. Berens, Fairmont, for ISD # 454.

KELLEY, Justice.

We granted petitions for further review of a trial court order dismissing sex discrimination actions by female teachers against 27 school districts and denying, in part, summary judgment to 3 school districts. The court of appeals reversed the dismissals and affirmed denial of summary judgment to 3 districts. *Carlson v. Independent School District No. 283*, 370 N.W.2d 51 (Minn.App.1985). We adhere to our holding in *Minnesota Mining & Manufacturing Co. v. State*, 289 N.W.2d 396 (Minn.1979) *(3M), appeal dismissed*, 444 U.S. 1041, 100 S.Ct. 725, 62 L.Ed.2d 726 (1980), that the 6–month filing requirement of Minn.Stat. § 363.06, subd. 3 was a jurisdictional prerequisite for maintaining a lawsuit under the Human Rights Act (HRA) before 1981. Accordingly, we reverse the court of appeals.

This case originated nearly a decade ago when five school teachers served a complaint charging their employers, five independent school districts, with sex discrimination for denying them use of accumulated sick leave for childbirth-related disabilities. The teachers had filed complaints with the Department of Human Rights (department) before initiating this class action suit in October 1976, naming five school districts and "all other defendants similarly

situated."[1] The original complaint listed two counts, one alleging violation of the Minnesota Human Rights Act, Minn.Stat. §§ 363.01–.14 (1976), and the other alleging violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e–2, 2000e–5 (1970). The teachers claimed their employers discriminated against them by maintaining policies that did not permit them to use accumulated sick leave for disability related to childbirth, forcing them to take unpaid maternity leave.

Only the five named school districts[2] were served in 1976. The school district defendants involved in this appeal were not formally notified of the suit until 6 to 7 years after its commencement. The suit was mentioned briefly in a November 1976 newsletter published by the Minnesota School Board Association. Plaintiffs claim this constituted constructive notice to all school districts in the state.

The procedural history of this case is long and tortuous. The Title VII count permitted removal of the action to federal district court in December 1976. In the same month, the United States Supreme Court decided *General Electric Co. v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), and in December 1977 decided *Nashville Gas Co. v. Satty*, 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977). These decisions held that sick leave plans which excluded pregnancy-related disabilities did not violate Title VII. As a result of these decisions, the Title VII count was dismissed by the federal district court in October 1978 and the case was remanded to state court.

Four years later in June 1982, plaintiffs moved for class certification in state district court under Minn.R.Civ.P. 23. The proposed plaintiff class consisted of all female teachers denied use of accumulated sick leave for disabilities relating to pregnancy and childbirth since September 5, 1975. The proposed defendant class included all school districts in Minnesota. At this point, numerous districts throughout the state, including those involved in this appeal, sent letters, affidavits, and memoranda to the court to oppose the motion for certification. The court denied the motion for class certification in December 1982.

After denial of certification, a number of individual teachers brought motions to intervene in the action and to join as defendants the school districts that had employed them. In August 1983, the court granted the motions of intervention and joinder to 67 women. Individual summons and complaints were served on the newly joined districts in November 1983. A month later, these districts moved for summary judgment.

Relying on our holding in *3M*, the Hennepin County District Court applied the 6-month time limit of Minn.Stat. § 363.06, subd. 3 as a jurisdictional prerequisite. It likewise held the period of limitations had run for any district against which no individual charge had been filed with the Department of Human Rights.

The trial court held the filing of the 1976 complaint against the original five defendant districts did not toll the running of the limitations period on any individual claims not timely filed against any other district. The court reasoned that absent a filing, the defendant lacked notice of the alleged claim. It also held that where a charge had been filed against a district, the limitations period was tolled with respect to claims of other plaintiffs employed by that district only for individual claims that met two conditions: (1) the intervenor's pregnancy leave must have ended within a period beginning March 27, 1976 (6 months before the filing of the action against the five named defendant school districts) and ending December 8, 1982 (the date of the

---

**1.** The teachers did not move for class certification at this time. In 1982, these plaintiffs did move for class certification which was denied.

**2.** The original defendant-school districts were Independent School District Nos. 283, 547, 526, 14 and 704. The five original plaintiffs, were Kay Carlson, Rose Colbjornson, Virginia Deeds, Pamela Meyer and Diane Wippler. Neither the original defendants nor plaintiffs are involved in this appeal.

state district court's order denying class certification); and (2) the intervenor must have been able to file a charge with the Department of Human Rights at or after the time that a charge was actually filed by another teacher in the same district. Based upon this reasoning, the trial judge issued an order in 1984 dismissing the claims against 27 of the newly-joined defendants.

It did, however, deny motions to dismiss claims against Independent School District Nos. 482 (Little Falls), 623 (Roseville), and 831 (Forest Lake). In the case of Independent School District No. 482, the court refused to dismiss the claims of two teachers who had met the requirements set forth. In the case of Independent School District Nos. 623 and 831, the court denied motions to dismiss even though the Commissioner of Human Rights had issued class action complaints, which eventually reached final disposition, against these school districts. These undismissed school districts argue that all claims that arose prior to or during the department's class actions are barred either by our holding in *3M* or by res judicata.

The present case involves a number of school teachers whose charges arise from different circumstances. However, notwithstanding a sketchy record, it appears most plaintiffs share two common factors: (1) their claims arose prior to 1981 and thus are governed by the pre–1981 version of Minn.Stat. § 363.03, subd. 3 and (2) none of the teachers filed charges with the Department of Human Rights as then required by the statute. In 1976, section 363.06, subd. 3 provided "A charge of an unfair discriminatory practice must be filed within six months after the occurrence of the practice."[3] The statute required the charge be filed with the commissioner of human rights or a designated agent, Minn.Stat. § 363.06. Under the law at the time, therefore, an individual could not maintain a private cause of action until a charge had first been filed with the Department of Human Rights. *See* Minn.Stat. § 363.14, subd. 1 (1976). These provisions remained unchanged in the 1978 and 1980 Minnesota Statutes.

We held the 6–month time filing requirement limit to be jurisdictional in two cases: *3M* and *Richardson v. School Board of Independent School District No. 271,* 297 Minn. 91, 210 N.W.2d 911 (1973). In *3M,* we considered a challenge by the Department of Human Rights to a district court ruling which had limited class membership in a class action discrimination suit against the 3M Company. The district court, relying on *Richardson,* had limited the class to plaintiffs with claims arising 6 months prior to the date of the commissioner's complaint. The department in *3M* argued the class ought to include those with claims dating back to 1973, or 3 years earlier than the date of the commissioner's complaint, because the original complainant had then charged discrimination on behalf of herself and others similarly situated. The department contended the 3M Company had notice a class action was involved rather than just an individual complaint of discrimination. In rejecting this assertion, we said:

> Our decision in *Richardson,* however, holds that the time limitation provision of the Minnesota Human Rights Act is jurisdictional and not merely for the purpose of giving notice. *A person has no statutory basis for bringing a lawsuit raising claims under the Human Rights Act unless he has filed a charge as to those claims within 6 months of the date he was last personally affected by the practice complained of. §§ 363.-06, subd. 3, and 363.14.* When the commissioner's power to institute litigation has ripened through the processing of the required charge, then the law recognizes an exception to the general rule and permits the commissioner to sue not only on behalf of the charging party but

---

**3.** In 1981, the legislature amended this provision to read: "A claim of an unfair discriminatory practice must be brought as a civil action pursuant to section 363.14, subdivision 1, clause (a), or filed in a charge with the commissioner within six months after the occurrence of the practice." Act of May 29, 1981, ch. 330, § 2, 1981 Minn.Laws 1508, 1509.

also on behalf of others whose rights to file their own charges have not expired. 289 N.W.2d at 401–02 (emphasis added).

■ Intervenors' claims are governed by provisions of the HRA in effect from 1976 through 1980. In *Buchholz v. Capp Homes, Inc.,* 321 N.W.2d 893 (Minn.1982), we refused to apply retroactively the 1981 amendments to Minn.Stat. § 363.06, subd. 3. At the time claims of these intervenors arose, the statutory and case law was clear: a cause of action could not be maintained in district court unless an action had first been instituted before the Department of Human Rights. *See* Minn.Stat. §§ 363.-06, subd. 4(3) & 363.14, subd. 1 (1976). In sum, jurisdiction would exist only if (1) the individual had first filed a charge with the department or (2) the commissioner had instituted the action as a class action on behalf of a group of persons that included the individual. *See Richardson,* 297 Minn. at 95–96; 210 N.W.2d at 914–15. Complainants at that time could not bypass the entire administrative structure of the Department of Human Rights by initiating or intervening in a private class action suit for violations of the HRA.

Intervenors argue, and the Court of Appeals agreed, that the United States Supreme Court effectively overruled our holding in *3M* in the case of *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). In *Zipes,* the Court construed provisions in Title VII of the Civil Rights Act of 1964 requiring an individual to file a charge of discrimination with the Equal Employment Opportunity Commission before instituting a civil action. *See* 42 U.S.C. § 2000e–5(f) (1982). The Court ruled the timely filing requirement of Title VII was "not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." 455 U.S. at 393, 102

S.Ct. at 1132 (footnote omitted). Apparently assuming this court is bound to interpret the state Human Rights Act in the same way the U.S. Supreme Court interprets Title VII, the Minnesota Court of Appeals declared the jurisdictional holding of *3M* is of no further precedential value. *Carlson v. Independent School District No. 283,* 370 N.W.2d 51, 54 (Minn.Ct.App.1985). The court then held the 6–month filing requirement to be a statute of limitations which would be tolled from the time of filing of the original complaint until a court decision on the class certification. Insofar as these claims are concerned, we disagree, but in doing so we note the limited scope of our holding. Our holding today applies only to claims arising under the Human Rights Act before the 1981 amendments that now permit claimants to file suits directly in state district court. *See* Minn. Stat. §§ 363.06, subd. 1 and subd. 3, 363.14 (1984).

Similarities exist between Title VII and the Minnesota Human Rights Act. As noted in *3M,* however, portions of the state act were patterned after the Uniform Law Commissioner's Model Anti-Discrimination Act rather than Title VII. 289 N.W.2d at 399.[4] In construing the Minnesota Human Rights Act, we have relied on occasion upon principles enunciated by federal courts in the adjudication of Title VII claims. *See, e.g. Sigurdson v. Isanti County,* 386 N.W.2d 715 (Minn.1986); *Hubbard v. United Press International, Inc.,* 330 N.W.2d 428 (Minn.1983); *Danz v. Jones,* 263 N.W.2d 395 (Minn.1978).

However, reliance on federal Title VII decisions as a guide at times does not necessarily mean that adherence to positions advanced in those decisions constrain this court as binding precedent in the interpretation of our state statute. Moreover, notwithstanding that our legislature has dis-

---

**4.** *See* Auerbach, *The 1967 Amendments to the Minnesota State Act Against Discrimination and the Uniform Law Commissioner's Model Anti-Discrimination Act: A Comparative Analysis and Evaluation.* 52 Minn.L.Rev. 231, 232, 245 (1967). *See also,* Auerbach, *The 1969 Amend-* ments to the Minnesota State Act Against Discrimination and the Uniform Law Commissioner's Model Anti Discrimination Act: A Comparative Analysis and Evaluation, 55 Minn.L.Rev. 259, 260 (1970).

played no aversion to directing us to follow federal social or economic statutes in the interpretation of our state statutes, (*see, e.g.*, Minn.Stat. § 80A.31 (1984)), it has not done so with respect to our state Human Rights Act.

More importantly, significant differences exist between state and federal civil rights laws. While both Title VII and the HRA prohibit discrimination in employment on the basis of race, color, religion, sex, and national origin, only the HRA expressly extends coverage to prohibit discrimination based on marital status, status with regard to public assistance or membership or activity in a local commission. 42 U.S.C. § 2000e–2(a)(1) (1982); Minn.Stat. § 363.03, subd. 1(2) (1984). Under Title VII, claimants may recover only those amounts necessary to make them "whole" for injuries suffered on account of unlawful employment discrimination. *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Claimants under the HRA may recover damages for mental anguish, punitive damages to $6,000, and treble back pay. Minn.Stat. § 363.071, subd. 2 (1984).

The scope of discrimination liability, and its consequences, is more onerous under our state laws than under Title VII. This is underscored by the procedural history of this case. The Title VII claim of the original plaintiffs was dismissed in federal district court after two United States Supreme Court decisions held that Title VII did not create employer discrimination liability for exclusion of pregnancy-related disabilities from sick leave plans. Only Minnesota state law provided the teachers a forum. This is not unusual. Minnesota has a long history of civil rights legislation and protection for groups beyond that afforded by federal law. See legislative history of state anti-discrimination statutes summarized in *United States Jaycees v. McClure*, 305 N.W.2d 764, 766–68 (Minn. 1981).

We note in *Zipes* that the United States Supreme Court relied specifically upon legislative history of Title VII and the statutory structure itself in ruling the timely filing requirement to be not jurisdictional. *See* 455 U.S. at 393–96, 102 S.Ct. at 1132–34. The Court concluded from examination of the legislative history that Congress had specifically indicated it intended the filing period to operate as a statute of limitations instead of a jurisdictional requirement. *Id.* at 394, 102 S.Ct. at 1133.

Although the Minnesota Legislature subsequently amended section 363.06, subd. 3, to transform it into a statute of limitations, *see* Minn.Stat. § 363.06, subd. 3 (1984), there exists nowhere any indication the legislature intended the filing requirements of the 1976 version of the statute to serve other than a jurisdictional purpose. The Minnesota Legislature has amended the HRA every year since 1973 and on at least one occasion it has shown a sensitivity to judicial decisions that might affect application of the act. *See 3M*, 289 N.W.2d at 399.[5] However, following this court's holding in *3M*, although the legislature amended section 363.03, *see* Act of April 11, 1980, ch. 540, § 2, 1980 Minn.Laws 703, 705, it did not change the language concerning the filing requirement or modify by statute this court's interpretation of it. When a court of last resort has construed the language of the law, the legislature in subsequent laws on the same subject matter is presumed to intend the same construction to be placed upon such language. Minn. Stat. § 645.17, subd. 4 (1984).

Finally, the statutory structure of Title VII, which the Court relied upon in *Zipes*, finds no counterpart in the HRA. Unlike Title VII, the 1976 version of the HRA specifically identifies the instances in which the district court has jurisdiction over claims. *See* Minn.Stat. §§ 363.06, subd. 4(3); 363.072; 363.091; 363.14 (1976). The

---

**5.** After the *Gilbert* decision, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), the state legislature amended the HRA in 1977 to clarify that the Minnesota sex discrimination provision was not to be interpreted the same as Title VII on exclusion of pregnancy benefits. 289 N.W.2d at 399.

rationale relied upon by the United States Supreme Court in *Zipes* is not directly applicable to the HRA.

We therefore follow our holding in *3M* and rule the filing requirement in the pre–1981 version of Minn.Stat. § 363.06, subd. 3 was jurisdictional. Claims of school teachers which arose under this version of the statute and for which no charge was filed with the Department of Human Rights are barred.

■ Two school districts involved in this appeal (Nos. 623–Roseville and 831–Forest Lake) were defendants in class action complaints actually issued by the Commissioner of Human Rights. Both school districts entered final stipulated settlements with the Department of Human Rights. The trial court denied these two school districts summary judgment on nine claims. The rule on class actions in *Richardson,* reiterated in *3M,* precludes six of these claims. In both cases we stated only those persons whose rights had been affected by the discriminatory practices within 6 months prior to the date of the commissioner's complaint were properly included in the class action. *Richardson,* 297 Minn. at 98, 210 N.W.2d at 916; *3M,* 289 N.W.2d at 401. The record demonstrates that six claims against Roseville and Forest Lake ripened before the period of eligibility for the commissioner's class action suit. None of the six claimants preserved her rights by filing individual charges with the department. The two districts were entitled to summary judgment on these claims. The fact that another schoolteacher from within those districts timely filed a charge with the department does not preserve the rights of those who did not file charges and were ineligible for class membership under the commissioner's complaint.

The remaining three claims were eligible for the commissioner's class complaint against Forest Lake School District (831). The Commissioner's complaint was certified as a class action in June 1980 after notice was allegedly given to all potential plaintiff class members. Forest Lake and the department eventually signed a settlement agreement and stipulation of dismissal. Forest Lake argues this settlement covered all claims which were or could have been raised by eligible class members. Neither the administrative judge who heard the commissioner's claim nor the trial court in this case made findings on whether these three claimants had notice of the commissioner's class action, chose to opt out, or received any part of the settlement. The school district argues the hearing examiner in the case certified the class action against Forest Lake after notice to all potential class members. The district contends the women failed to pursue their claims then and should now be barred by principles of res judicata.

■ Without any factual finding on whether the three eligible class members were notified, we are unable to rule on whether the trial court's denial of the summary judgment motion was proper. If the commissioner gave notice reasonably designed to reach all potential class members, then denial of summary judgment was improper. *See* Minn.R.Civ.P. 23.03(2). We remand to district court for a factual finding on this issue and reconsideration of the district's summary judgment motions based on those findings.

Sheila Ayers, an employee of Independent School District No. 482, Little Falls, timely filed a charge with the Department of Human Rights. Her claim, therefore, would not be barred and the school district does not appear to challenge this because that complaint apparently was resolved. Sandra Backowski, also a complainant against the Little Falls District, failed to file a charge with the department although she could have done so within six months of the Ayers' claim. Although the trial court dismissed an earlier claim by Backowski, it did not dismiss a second claim asserted by her in this case because her second maternity leave ended after this class action complaint had been filed in district court. It concluded she would have been able to file a timely complaint with the department at or after the charge by Ayers. Because Ms. Backowski failed to

meet the jurisdictional prerequisite under *3M* her second claim should likewise have been dismissed.

█ As an additional rationale for reversing the trial court, the court of appeals held that the statutory filing requirement should have been tolled in favor of the intervening teachers between the time of the filing of the original district court class action and the denial of certification. We note there exists no finding by the trial court that any of these defendants had adequate notice of the pendency of the original class action to meet legal requirements of tolling. In discrimination actions, it is clear that the limitation statute is not tolled unless there was adequate notice to these originally unnamed school districts.[6] There exists adequate notice when the defendant is notified not only of the substantive claims being asserted, but also of the number and generic identities of the potential plaintiffs. *See American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554–55, 94 S.Ct. 756, 766–67, 38 L.Ed.2d 713 (1974).

In this case, no factfinder has explicitly found adequate notice. In its memorandum attached to the dismissal order, the trial court has found inadequate notice. Intervenors assert the impleaded districts received "informal" notice of the class action suit through a January 1977 newsletter containing an abstract of minutes of an executive committee meeting of the Minnesota School Board Association. Whether this constitutes adequate notice is highly questionable. In and of itself, without more, it is doubtful the small item in the newsletter would constitute legal notice sufficient to convey the essential informa-

tion required to bring into play equitable tolling of the statute. *Id.*

The trial court apparently concluded that such tenuous and questionable "informal" notice six years in the past was not adequate notice. For adequate notice, the trial court required a showing that at least one teacher had filed a charge with the Department of Human Rights against a particular district for any intervenor to maintain an action against that district. In essence the trial court allowed the filing of the class action by the five original plaintiffs to have the same legal effect as had a complaint been filed by the Commissioner of Human Rights. The trial court then applied the rationale we postulated in *Richardson*.[7]

Even should one accept the contention that the defendant school districts should have been alerted to the possibility of litigation in 1976, no further action took place in this suit for six years. That unexplained lapse of time surely dissipated any impact the 1976 "informal" notice may have had. That fact, in and of itself, bolstered the trial court's determination of inadequate notice to the districts so as to toll the filing limitations statute.

█ Moreover, even if equitable tolling is recognized, it would be inapplicable here. Neither the original five teachers who commenced this action nor these intervenors proceeded properly. In *Buchholz v. Capp Homes, Inc.*, 321 N.W.2d at 895, we indicated that the law applicable at the time the cause of action arose governs claims under the Human Rights Act. Although the record is not completely clear, it appears that all of these claims arose prior to 1981. At that time, a discrimination claim under the Human Rights Act could not be

---

6. The court of appeals placed significance upon the fact that in 1976 the Minnesota School Board Association Executive Committee was aware of the commencement of the suit. The existence of the suit was a topic of discussion at one of that board's meetings, an abstract of the minutes of which had been sent to school board members throughout the state. There is no evidence school board members actually read the brief abstract in the newsletter. There never has been a finding by a trial court that any of these school districts had notice of any kind,

either formal or informal, of the existence of this class action against them.

7. Because the 1976 law provides no statutory basis for maintaining a private class action under the Human Rights Act, the propriety of the trial court's approach is likewise questionable. We do not, however, address that issue because the result would be the same—inadequacy of notice to the defendant class.

**224**

processed through the courts without first the claimant filing a complaint with the Commissioner of Human Rights, who, in the appropriate case, would process the complaint in district court. None of these intervenors, whose suits in intervention were dismissed by the trial court, had filed complaints with the Department of Human Rights prior to moving to intervene in this action.

We reverse the court of appeals and hold the 6-months' filing time limit in Minn.Stat. § 363.06, subd. 3 (1976), was jurisdictional. Since the intervenors failed to file within that time with the commissioner, the trial court's order dismissing sex discrimination actions against 27 school districts is affirmed. We affirm the trial court's order denying dismissal of the Ayer's claim against Independent School District No. 482 (Little Falls). We reverse the trial court's order denying dismissal of the Backowski claim (second pregnancy) against Independent School District No. 482 (Little Falls). We reverse the trial court's order denying dismissal of the Mikolich and Wegge claims against Independent School District No. 623 (Roseville), and the claims of Cross, Hegler, Heisserer and Ziegler against Independent School District No. 831 (Forest Lake). We remand the claims of Behning, Kramer and Martin against Independent School District No. 831 (Forest Lake) for a factual finding to determine whether there was adequate notice to all potential members of the commissioner's class action.

SIMONETT, J., took no part in the consideration or decision of this case.