**James FUNCHIE and Willie B. Allen, Plaintiffs,**

v.

**PACKAGING CORPORATION OF AMERICA, a Delaware Corporation, and United Paperworkers International, Local 1259, Defendants.**

**Civ. No. 4–78 Civ. 34.**

United States District Court, D. Minnesota, Fourth Division.

June 6, 1980.

---

42. Plaintiffs' brief in support of plaintiff's motion for summary judgment, p. 10. See also *id.* at 34.

Randall Smith, Richard J. Fuller, Legal Aid Society of Minneapolis, Minneapolis, Minn., for plaintiffs.

Richard T. Thomson, Gordon Busdicker, Faegre & Benson, Minneapolis, Minn., for defendants.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

This is an action by plaintiffs James Funchie and Willie B. Allen against their former employer, Packaging Corporation of America (PCA), for declaratory and injunctive relief and lost wages and benefits. Plaintiffs, both blacks, were participants in a federally supported employment program called JOBS '70 through which they went to work at PCA. They were subsequently terminated by PCA and not rehired. Plaintiffs claim that the requirement of an additional 30-day probationary period beyond an on-the-job training period and PCA's termination of their employment and failure to recall them violated their rights as third-party beneficiaries of the JOBS '70 contract (the contract), their rights as third-party beneficiaries of the collective bargaining agreement (the agreement), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, § 301 of the Labor Management Relations Act, 1947, 29 U.S.C. § 185(a) (the Labor Act), and the Manpower Development and Training Act, 42 U.S.C. § 2571, *et seq.* (the Manpower Act).

Defendant PCA has moved pursuant to Rule 12(b) and Rule 56 of the Federal Rules of Civil Procedure for partial summary judgment and dismissal of plaintiffs' claims (except the claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*) because of: (1) the statute of limitations, (2) laches, (3) failure to state a claim upon which relief can be granted under the Manpower Development and Training Act, (4) failure to exhaust contractual remedies, and (5) lack of subject matter jurisdiction under the National Labor Relations Act.

*Facts*

PCA owns and operates a container plant in Minneapolis, Minnesota. On April 7, 1972, PCA entered into a contract with the Greater Minneapolis Chamber of Commerce and the United States government, through the United States Department of Labor and the Federal Manpower Administration, under a government sponsored program, JOBS '70, to help disadvantaged persons become qualified to gain and maintain employment.

To come within the definition of "disadvantaged" so as to be eligible to receive help from the JOBS '70 program, an individual had to have a low income and to meet one of a number of other criteria, including membership in a minority race. Plaintiffs were certified as eligible for the JOBS '70 program.

When plaintiffs began the JOBS '70 program in June of 1973, trainees under the program were required, among other things, to spend 390 hours at PCA in on-the-job training. The Department of Labor, through the Greater Minneapolis Chamber of Commerce, reimbursed PCA for half the regular wages PCA paid a JOBS '70 trainee during the on-the-job training period. In return, PCA agreed to operate its training program according to standards set by the contract. The contract included requirements that JOBS '70 employees not be discriminated against and that their training be reasonable and comparable to that of other employees.

Plaintiffs started work at PCA in the on-the-job training component of the program on July 9, 1973, and completed the program on approximately October 10, 1973. According to PCA, plaintiffs then commenced a 30-day probationary period as

required by the agreement[1] as a prerequisite to joining the union and gaining seniority rights. Plaintiffs contend that their probationary period commenced on July 9, 1973, when they started at PCA, and that their probationary period was completed prior to their termination on November 2, 1973, as part of a general reduction in work force. According to PCA, plaintiffs were still at that time probationary employees without seniority rights and subject to discharge rather than to being laid off subject to recall. When PCA recommenced hiring in January of 1974, plaintiffs were not rehired.

*Statute of Limitations Issues*

PCA contends that plaintiffs' claims under the contract, the agreement, the Labor Act, and § 1981 are barred by the applicable statute of limitations.

The parties agree that the appropriate statute of limitations for the claims as third-party beneficiaries of the contract and the agreement is governed by Minnesota law [*Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945)], but they disagree as to which Minnesota statute is applicable. It is PCA's position that the two-year statute of limitations for wage actions applies;[2] plaintiffs contend that the six-year statute of limitations for contract actions applies.[3]

■ Plaintiffs contend that their claims are contractual claims because the contract and the agreement each provide a package of benefits of which wages are only a part. The Minnesota Supreme Court, however,

has held that wage claims arising under a collective bargaining agreement (presumably not purely a wage contract) are governed by the two-year limitation period prescribed by Minn.Stat. 541.07(5), *Kohout v. Shakopee Foundry Co.*, 281 Minn. 401, 162 N.W.2d 237 (1958), and that the statute encompasses contracts for services, *Roaderick v. Lull Engineering Co., Inc.*, 296 Minn. 385, 208 N.W.2d 761 (1973).

The lost income plaintiffs seek to recover falls within the statutory definition of wages. Plaintiffs seek in their complaint to recover earnings, wages, and other benefits. Minn.Stat. 541.07(5) defines wages as "all remuneration for services or employment, including commissions and bonuses, and the cash value of all remuneration in any medium other than cash, where the relationship of master and servant exists . . ."

■ The timeliness of actions brought pursuant to § 301 of the Labor Act, 29 U.S.C. § 185(a), and 42 U.S.C. § 1981 is also determined by the applicable state statute of limitations. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *United Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). Under Minnesota law, the appropriate statute of limitations for wage claims under § 301 of the Labor Act and § 1981 is Minn.Stat. 541.07(5), prescribing a two-year limitation period. *See Brotherhood of Railway and Steamship Clerks v. State*, 303 Minn. 178, 229 N.W.2d 3 (1975) (two-year limitation period applied for recovery of back wages

1. United Paperworkers International Local 1259 is the recognized collective bargaining agent for the relevant unit of workers employed by PCA and is party to a collective bargaining agreement with PCA governing the terms and conditions of employment. Local 1259 was initially a defendant in this lawsuit but was dismissed in April of 1980 by stipulation.

Article XVI(B)(1) of the agreement required a 60-day probationary period for new employees but allowed an extension of 30 days for individual employees. PCA states that the probationary period for JOBS '70 employees was reduced to 30 days.

2. Minn.Stat. 541.07(5) provides in part:

Except where the uniform commercial code otherwise prescribes, the following actions shall be commenced within two years:

(5) For the recovery of wages or overtime or damages, fees or penalties accruing under any federal or state law respecting the payment of wages or overtime or damages, fees or penalties.

3. Minn.Stat. 541.05, subd. 1(1) provides in part:

Except where the uniform commercial code otherwise prescribes, the following actions shall be commenced within six years:

(1) Upon a contract or other obligation, express or implied, as to which no other limitation is expressly prescribed . . .

in a dispute involving alleged racial discrimination against two black employees).

■ Even though the court has determined that the two-year limitation period applies to these claims of plaintiffs, an issue remains as to when the statute commenced to run, and this issue cannot be resolved on defendant's motion for partial summary judgment. Whether the termination of plaintiffs in November of 1973 was a discharge which commenced the running of the statute or whether it was a layoff as plaintiffs contend[4] cannot be determined until trial. A discharge commencing the statutory period is to be distinguished from "a layoff where there is a continuing expectancy of rehiring, and, until the occurrence of an event which precludes such expectancy, the statutory period would not commence." *Richardson v. School Board of Independent District No. 271*, 297 Minn. 91, 98, 210 N.W.2d 911, 916 (1973).

*Laches*

■ PCA moves the court for dismissal of plaintiffs' claims or summary judgment in favor of defendant on the grounds that plaintiffs' purported claims under the contract, the agreement, the Labor Act, and the Manpower Act should be dismissed under the doctrine of laches. There are two criteria for dismissal for laches: (1) unreasonable delay in bringing the suit and (2) prejudice to the defendant caused by such delay.

■ Plaintiffs have not unreasonably delayed so as to cause prejudice to PCA warranting dismissal on the basis of laches. Plaintiffs brought timely administrative complaints. PCA claims that in the meantime the Greater Minneapolis Chamber of Commerce destroyed records submitted by PCA which it contends could prove the propriety of the length of its JOBS '70 program, but it has failed to establish that it has been unduly prejudiced. Its records should be sufficient to defend its practices; it had notice of plaintiffs' administrative

claims and should have retained sufficient records to defend its employment practices with respect to plaintiffs.

*The Manpower Development and Training Act*

PCA moves the court for dismissal of plaintiffs' claims under the Manpower Act, 42 U.S.C. § 2571, *et seq.*, on the grounds that plaintiffs fail to state a claim upon which relief can be granted because: (1) the Act does not impose on private parties any duties which could be violated and (2) the Act creates no express or implied private right of action.

Plaintiffs claim that PCA violated § 2584(b)(2) of the Manpower Act, which provides in pertinent part:

> In adopting or approving any training program under this part [42 U.S.C. §§ 2581–2587], and as a condition to expenditure of funds for any such program, the Secretary shall make such arrangement as he deems necessary to insure adherence to appropriate training standards, including assurances—
> (2) that the training period is reasonable and consistent with periods customarily required for comparable training . . .

Section 2584(b)(2) imposes duties upon the Secretary of Labor, but does not impose any obligation on private employers, nor do any other provisions of the Act. The Act does not expressly confer a private right of action. The issue, therefore, is whether a private remedy is implicit in the Act.

*Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), set four tests to determine whether Congress intended a private remedy where one is not expressly provided: (1) whether the statute was enacted for the benefit of a special class of which plaintiff is a member, (2) whether there is any indication in the legislative history of a congressional intention to create a private remedy, (3) whether implication of such a

---

4. Plaintiffs claim to have had an expectancy of rehiring until January 24, 1978, when PCA laid off or discharged any employee whose seniority

date came before or on the same date as that claimed by plaintiffs.

remedy is consistent with the underlying purposes of the legislative scheme, and (4) whether implying a federal remedy is inappropriate because the subject matter involves an area basically of concern to the state.

The initial question is whether the statute was enacted for the benefit of a special class of persons of which plaintiffs are members. This question is answered by looking to the language of the statute itself. *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). In *Cannon* the Supreme Court distinguished statutes expressly identifying a class Congress intended to benefit from statutes with language customarily found in laws enacted for the protection of the general public. Section 901(a) of Title IX of the Education Amendments of 1972 was found to expressly identify a class Congress intended to benefit. Section 901(a) provides:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . 20 U.S.C. § 1681.

An alternative proposal to Title IX was cited as an example of language customarily found in laws enacted for the protection of the general public:

> The Secretary shall not make any grant, . . . nor shall the Secretary enter into any contract with any institution of higher education . . . unless the application, contract, or other arrangement for the grant . . . contains assurances satisfactory to the Secretary that any institution . . . will not discriminate on the basis of sex . . .

The court characterized the proposal as a "simple directive to the Secretary of HEW." 441 U.S. at 693, n. 14, 99 S.Ct. at 1955. This language is strikingly similar to the language of the Manpower Act. There is "far less reason to infer a private remedy in favor of individual persons if Congress, . . . had written [a statute] simply as

. . . a prohibition against the disbursement of public funds to . . . institutions engaged in [disfavored] practices." 441 U.S. at 690–692, 99 S.Ct. at 1955.

The second *Cort* test is whether the legislative history indicates a congressional intention to create a private remedy. Both parties concede that the congressional history is silent on this issue. Plaintiffs, however, argue that a private right of action should be inferred because Congress did not expressly deny one. The Supreme Court rejected a similar argument in *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). Congressional silence in these circumstances militates against finding a private right of action.

■ The Supreme Court has adhered to a stricter standard for implication of private causes of action in a series of cases since 1964, and in *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), it held that the central inquiry in determining whether a private right of action exists is whether Congress so intended. The Manpower Act by its terms does not grant any private rights to any identifiable class and proscribes no conduct as unlawful. Moreover, the parties agree that the legislative history does not speak to the issue of private remedies under the Act. In these circumstances, the inquiry ends here, and no private right of action may be inferred. *Id.* at 576, 99 S.Ct. at 2489.

Under the *Redington* method of analysis, it is unnecessary to reach the remaining *Cort* tests, and plaintiffs' claims under the Manpower Act should be dismissed for failure to state a claim upon which relief can be granted.

*Exhaustion of Contractual Remedies*

PCA moves for dismissal of plaintiffs' claims under the contract for failure to exhaust their remedies under paragraph 10 of the contract. Paragraph 10 provides that the contracting officer shall decide disputes. His decision is final unless the contractor appeals within 30 days to the Secretary of Labor. Provision is made for the right of the contractor to be heard and offer evidence.

■ Plaintiffs correctly note that paragraph 10 only provides a remedy to the contractor and not to individual employees. By its terms paragraph 10 does not contemplate disputes or appeals by individual employees. Plaintiffs lacked standing to invoke the dispute resolution procedure set forth in paragraph 10. Their claims, therefore, are not barred for failure to resort to contractual remedies not available to them.

*The National Labor Relations Act*

■ PCA lastly contends that plaintiffs' claims under the National Labor Relations Act should be dismissed because the court lacks subject matter jurisdiction. Plaintiffs allege in paragraph XXII of their complaint that:

> The acts of defendants . . . violate the collective bargaining agreement between the Company and Local 1259, in violation of the National Labor Relations Act, 29 U.S.C. § 141, *et seq.*

Plaintiffs correctly cited a relevant Code section of the Labor Management Relations Act, but incorrectly entitled it the National Labor Relations Act. This court lacks subject matter jurisdiction over claims brought under the National Labor Relations Act, but has jurisdiction over claims brought by employees against an employer for breach of a collective bargaining agreement brought pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Smith v. Evening News Association,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); *International Association of Machinists v. Gonzales,* 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018 (1958).

Although plaintiffs incorrectly referred to the National Labor Relations Act, PCA discusses the Labor Management Relations Act in footnotes on pages 10, 11, and 15 of its memorandum. It has been aware of plaintiffs' error and the true nature of their claims and has not been prejudiced by the error. The motion to dismiss on this basis is accordingly denied.

Accordingly, upon all the files, records, and proceedings herein,

IT IS HEREBY ORDERED:

1. That defendant's motion to dismiss plaintiffs' claim under the Manpower Development and Training Act, for failure to state a claim upon which relief can be granted, is granted.

2. That defendant's motion for dismissal and partial summary judgment is in all other respects denied.