Reverend Orville T. OLSON, Appellant,

v.

Jack H. HORTON, et al., Respondents.

No. 46952.

Supreme Court of Minnesota.

Sept. 23, 1977.

---

Powell, Drahos & Baer and Carl C. Drahos, Bemidji, for appellant.

Cahill, Gunhus, Streed, Grinnell, Jeffries & Klinger and Gunder Gunhus, Moorhead, for respondents.

Heard before PETERSON, TODD and YETKA, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

Plaintiff, Reverend Orville T. Olson, a Lutheran minister, was injured while in the scope of his employment on January 29, 1971, when his automobile was struck by a truck driven by defendant Jack H. Horton for Horton's employer, defendant Midwest Coast Transport, Inc. Plaintiff was covered by worker's compensation insurance purchased by the Association of Free Lutheran Churches (AFLC) from St. Paul Fire and Marine Insurance Company (hereafter "insurance company"), which was also Horton's employer's liability insurer. On December 8, 1971, plaintiff reached a settlement agreement with a claims agent employed by the insurance company and signed a "full and final" release of all claims against defendants.

Approximately 2 years after signing the release and several months after undergoing surgery for fusion of fractured vertebrae, plaintiff instituted this action for damages. Defendants alleged the release in defense. Plaintiff moved for partial summary judgment primarily on the grounds that a conflict of interest is created when a single insurer is both worker's compensation carrier and liability insurance carrier and that a release given to an insurer in that position is invalid where the insurer has acted to prejudice the employee's rights. The trial court denied plaintiff's motion and granted summary judgment in favor of defendants, dismissing with prejudice plaintiff's cause of action. We affirm.

Following the accident,[1] which occurred near Rothsay, Minnesota, plaintiff was hospitalized in nearby Fergus Falls for several days. The first doctor to treat plaintiff described his injury as a "compression fracture of the first lumbar vertebra." Subsequent reports from doctors at the Mayo Clinic diagnosed his injury as a musculoligamentous strain.

In mid-February 1971, the AFLC filed a first report of plaintiff's injury with the insurance company's worker's compensation division located in Minneapolis, and Horton's employer filed a loss notice with the insurance company's liability insurance division. The worker's compensation claim was assigned to claims agent Janis Bohlken, who notified the Department of Labor and Industry of the injury report. The loss notice was referred to Garry Anderson, a claims agent in the insurance company's Fargo, North Dakota, office, which handled casualty claims originating in northwestern Minnesota.

Although a bill dated March 10, 1971, for medical treatment was submitted to Bohlken, no worker's compensation benefits were paid to plaintiff because Bohlken requested and was granted extensions until April 9, 1971, during which to conduct an investigation. It appears that no investigation had in fact been conducted by April 5, when plaintiff advised Bohlken that he was going to pursue his third-party claim. Bohlken thereafter considered the file dormant and so advised the Department of Labor and Industry.

Plaintiff chose to pursue his third-party claim rather than his worker's compensation claim when, on April 5, 1971, Bohlken telephoned to advise him that he had "two claims pending with the [insurance] company, one with [Horton's employer] and the other with AFLC." Bohlken asked that plaintiff "release one claim in order to simplify the records." She indicated that it did not matter which he chose to pursue first.

---

1. On the basis of depositions submitted in support of the motion for summary judgment, the trial court concluded that, should the case go to trial, "there would be some question of liability under comparative negligence and that it would not be improbable for the plaintiff to be found liable for some degree of the fault causing the accident." For the purposes of this appeal, nothing more need be known about the accident.

Plaintiff had previously been in communication with Anderson, who had requested him to submit a report of the damage done to his automobile and to submit his medical bills for reimbursement pending a settlement. Payments in advance of settlement were made under an arrangement of the insurance company known as the "Quiet Assistance Program." Between May 14, 1971, and December 8, 1971, Anderson reimbursed plaintiff for medical and mileage expenses; reimbursed plaintiff's parish for the wages paid to plaintiff while he was unable to work; and reimbursed plaintiff's automobile insurer for $2,484.89 of the amount paid to plaintiff for damage to his automobile.

On December 8, 1971, plaintiff brought additional outstanding medical bills to Anderson's office. At that time, he signed the release of all claims against defendants. The release by its terms applies to "all known and unknown and anticipated and unanticipated injuries and damages resulting from said accident, casualty or event, as well as to those now known or disclosed."[2] In consideration for the release, plaintiff received $7,500, including the amounts already paid by the insurance company other than the property damage award. At the time plaintiff signed the release, the $7,500 paid in settlement exceeded the special damages he had thus far incurred by between $3,500 and $4,000. However, when plaintiff instituted this action, the $7,500 sum approximated his special damages.

Plaintiff asserts that the intent of the worker's compensation laws is that the compensation insurer assist the employee in maximizing his recovery against a third-party tortfeasor. He argues that we should invalidate this release since, because of the conflict of interest here present, the insurer not only did not assist plaintiff in pursuing his third-party claim, but affirmatively acted to impede plaintiff's chances of maximum recovery. Plaintiff does not propound a per se rule invalidating any release given

to an insurer with a conflict of interest, but seeks to void a release where the insurer has used its position to its own advantage and the employee's detriment. He asks us to fashion a rule requiring an insurer which in a given situation is both a liability and worker's compensation insurer to report this fact to the Department of Labor and Industry and give a full disclosure to the employee of the existing conflict of interest.

Plaintiff also contends that where such a conflict of interest is present, a less stringent standard of duress, misrepresentation, or overreaching should suffice to invalidate a release than would be sufficient in the ordinary case. In this case, plaintiff argues that the release should be set aside because of the following alleged misconduct of the insurer: Economic coercion imposed by denying plaintiff worker's compensation benefits pending completion of an illusory investigation, and by telling plaintiff to pursue either of the two claims when he could have received worker's compensation benefits while pursuing the third-party claim; Bohlken's and Anderson's failure to explain that two-thirds of any third-party settlement would offset worker's compensation benefits otherwise payable; Anderson's exploitation, by pounding on the table and refusing to accept plaintiff's suggested settlement figure of $10,000, of plaintiff's reluctance to resort to court proceedings because of plaintiff's belief that litigation was unbecoming to one in his profession; Anderson's placement of the settlement discussions in his own office, the "environment of the opposition"; and Anderson's use of a "psychological approach" in which he agreed to pay each bill without question while reminding plaintiff of his desire to settle the case. Plaintiff admits that in the absence of the alleged conflict of interest present in this case, he would have no grounds upon which to challenge the settlement.

**2.** With respect to the nature of plaintiff's injuries, plaintiff acknowledges that the release is an all-encompassing one and admits that there was no mistake of fact sufficient to invalidate the release.

■ We hold that no conflict of interest was created in this case. The interests of a third-party liability insurer are always adverse to those of an individual in plaintiff's position. The Minnesota worker's compensation statutory scheme recognizes that the employer's interests as well may be adverse. See, e. g., Minn.St. 176.221. Minn.St. c. 176 does not make the employer the employee's agent. It is true that by giving the compensation carrier subrogation rights, the statute creates an incentive for the compensation carrier, in the ordinary case, to assist the employee. But it does not impose upon the employer any duty to inform the employee of his rights or of the deduction from worker's compensation benefits of amounts paid by a third party. Rather, Minn.St. 176.235 provides that when the Department of Labor and Industry receives notice or information that an employee has sustained an injury which may be compensable, the *commissioner* "shall mail a form letter notice to the employee stating briefly and simply the rights and duties of the employee in such case."[3] Furthermore, Minn.St. 176.261 authorizes the commissioner, upon request from an employer or an employee, to designate a department employee to advise the party of his rights and to assist him in adjusting differences between the parties.

■ Plaintiff has failed to show how, in the absence of any duty to explain his rights, the insurance company through either of its agents prejudiced those rights. Plaintiff has not shown that it made any difference whether he pursued one claim or the other first.[4] Minn.St. 176.061, subd. 5, contemplates that the employee may pursue his cumulative remedies in either order.

■ The deposition testimony upon which the motion for summary judgment was based does not support plaintiff's allegation of economic coercion. Plaintiff admitted that Anderson paid the medical bills as presented. Plaintiff's parish continued throughout to pay him wages and provide him with housing. Had plaintiff been receiving worker's compensation, he would not, presumably, have been paid in advance of settlement under the insurance company's "Quiet Assistance Program." Plaintiff's other allegations of misconduct do not rise to the level of duress, misrepresentation, or overreaching.

■ The situation at issue here, in which a single carrier insures both employer and tortfeasor, is undoubtedly a common one. It is also a situation susceptible of abuse; e. g., should the liability division claims agent make use of confidential information included in the worker's compensation file. No such allegation is made here, however. We hold that the insurance company has breached neither statutory nor common-law duty to plaintiff. Plaintiff has stated no grounds upon which we may invalidate the release.[5]

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.

---

3. The record does not reflect whether plaintiff ever received such a notice. Bohlken's testimony that she filed the notice of injury with the Department of Labor and Industry is undisputed.

4. The logical implication of Bohlken's request, as recalled by plaintiff, that he release one of the two claims is not that he could not pursue both simultaneously but that he would complicate the paperwork by so doing. Plaintiff settled his third-party claim. His worker's compensation claim remains for disposition.

5. With respect to the alleged misconduct of claims agent Bohlken in requesting an extension but conducting no investigation, plaintiff's recourse lies in Minn.St. 176.221, which establishes a scheme of penalties.