Donald BERGESON, et al., Appellants,

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY,
Respondent.

No. C2–86–1048.

Court of Appeals of Minnesota.

Dec. 30, 1986.

Review Granted Feb. 25, 1987.

---

Joseph T. Herbulock, Abrams & Spector, P.A., Minneapolis, for appellants.

Steven J. Cahill, Cahill & Maring, P.A., Moorhead, for respondent.

Heard, considered and decided by WOZNIAK, P.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Appellants Donald and Signe Bergeson sued respondent United States Fidelity & Guaranty Insurance (USF & G), the workers' compensation carrier of Donald Berge-son's employer, for intentional obstruction of workers' compensation benefits under Minn.Stat. § 176.82 (1984).

Appellants and respondent moved for summary judgment. The trial court granted respondent's motion for summary judgment on appellant's action for intentional infliction of emotional distress. Subsequently, the court denied appellants' motion for partial summary judgment on the issues of intentional obstruction and workers' compensation benefits.

On April 4, 1986, the workers' compensation section of the Office of Administrative Hearings entered findings and an order awarding appellant partial permanent disability, additional awards pursuant to Minn. Stat. §§ 176.101 (1984), 176.225 (1984), and interest and attorney's fees, subject to a credit to the employer and the insurer for previous permanent disability payments made.

On May 28, 1986, the trial court granted respondent summary judgment on appellants' § 176.82 claim. We affirm.

## FACTS

Appellant Donald Bergeson was employed by Danny's Construction Company. On May 17, 1978, in the course and scope of his employment, he fell from the roof of a building and sustained spinal cord injuries. As a result of his injuries, appellant is now quadriplegic.

At the time appellant was injured, USF & G provided workers' compensation liability insurance for Danny's Construction. USF & G began paying temporary total permanent disability benefits, as well as medical expenses, shortly after appellant's accident. Beginning in October 1978, USF & G also paid for nursing services performed for appellant at his home two or three hours per day, five days a week. During this time, Mrs. Bergeson also performed nursing services for appellant.

In May 1984, appellants' attorney first informed respondents of the claim for permanent partial disability payments. In 1984 appellants first requested permanent

partial disability benefits for Donald Bergeson and for compensation for Signe Bergeson's nursing services. Appellants made no earlier claims for these benefits because they were not aware that benefits were available. On September 5, 1984, respondent paid an amount representing 350 weeks of permanent partial disability benefits plus nine percent interest from January 1, 1979. Respondent made an additional payment representing 150 weeks plus interest on January 29, 1985. After being informed of the claim for Mrs. Bergeson's nursing services, respondent paid a lump sum of $76,720 for past nursing services and $386.88 per week until February 4, 1986. At that time, based on a decision of a hearing officer under the Workers' Compensation Medical Services Review Board, weekly payments were reduced to $333.125.

The district court entered summary judgment for respondents on appellants' action based on intentional obstruction of workers' compensation benefits. The Bergesons appeal.

### ISSUES

1. Did the trial court properly grant summary judgment, finding that Minn.Stat. § 176.82 did not apply to the insurer's failure to inform appellant of available benefits?

2. Did the trial court properly find that appellants did not produce sufficient evidence to support their claim of intentional obstruction under § 176.82?

3. Is the workers' compensation division's holding, that insurer's conduct did not warrant a penalty, res judicata?

### ANALYSIS

On appeal from summary judgment, the function of the appellate court is to determine whether there are genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979).

### I.

*Applicability of Minn.Stat. § 176.82*

The district court denied appellants' requested relief on the basis that § 176.82 does not cover their claim. The statute provides:

> Any person discharging or threatening to discharge an employee for seeking workers' compensation benefits or in any manner *intentionally obstructing* an employee seeking workers' compensation benefits is liable in a civil action for damages incurred by the employee * * * and for punitive damages not to exceed three times the amount of any compensation benefit to which the employee is entitled.

Minn.Stat. § 176.82 (emphasis added).

This statute was enacted to punish employers guilty of retaliatory discharges, to deter such conduct by others, and to afford redress to employees who lose their employment as the consequence of retaliatory dismissal. *Wojciak v. Northern Package Corp.,* 310 N.W.2d 675 (Minn.1981). Although the statute makes no express reference to insurers, the supreme court recognized in *Wojciak*

> that a compensation insurer, by reason of its relationship to the employer-insured, can exert at least some influence on the latter to refrain from conduct giving rise to claims for the punitive damages allowed by Minn.Stat. § 176.82 (1980).

*Id.* at 680–1.

Appellants claim respondent intentionally concealed the availability of partial disability benefits and home nursing payments, hoping not to get "caught." *See Tracy v. Streater/Litton Industries,* 283 N.W.2d 909 (Minn.1979). They contend that respondent's silence as to existence of these benefits while making permanent disability and professional nursing payments "lulled" appellants into thinking they were getting all available benefits and prevented them from seeking benefits to which they were entitled.

■ Minn.Stat. § 176.225, subd. 1 (1984), specifically provides penalties for an insurer's refusal to pay workers' compensation benefits.

Upon reasonable notice and hearing or opportunity to be heard, the division, a compensation judge, or upon appeal, the workers' compensation court of appeals or the supreme court may award compensation, in addition to the total amount of compensation award, of up to 25 percent of that total amount where an employer or insurer has:

*　　*　　*　　*　　*　　*

(b) unreasonably or vexatiously delayed payment; or,

(c) neglected or refused to pay compensation; or,

(d) intentionally underpaid compensation.

*Id.*

Section 176.225, which is applicable to only insurers, controls over the more general provisions of § 176.82. Where a general limitation law applicable to numerous classes of cases conflicts with law applicable only to a particular class, the latter controls. *State v. Bies*, 258 Minn. 139, 147, 103 N.W.2d 228, 235 (1960). *See also Olson v. Horton*, 258 N.W.2d 610, 614, n. 5 (Minn.1977) (plaintiff's recourse against claims agent who requested an extension but conducted no investigation was in Minn.Stat. § 176.221).

■ Respondent's failure to pay, even if intentional, is covered under the terms of § 176.225, subd. 1 (c). Although the trial court granted respondent summary judgment on the basis that a carrier's conduct cannot be subject to sanctions under § 176.82, the court also found that if § 176.82 applied, appellants did not satisfy its requirements. Respondent's passive conduct did not rise to the kind of obstructive behavior covered by § 176.82.

The court held that appellants fell short of the showing necessary to raise a genuine issue of material fact regarding the carrier's motivation under § 176.82.

## II.

*Sufficiency of Evidence for Penalty Under § 176.82*

Respondent admitted knowing it was obligated to pay for home nursing care and permanent partial disability. Respondent's representative testified that it did not pay for home nursing care because appellant submitted no bills. It claimed that it did not make the permanent partial disability payments due to an oversight. After respondent discovered its obligation to pay permanent partial disability benefits, however, it still did not make payment.

■ Section 176.82 pertains to conduct "intentionally obstructing" an employee seeking workers' compensation benefits. Black's Law Dictionary defines "intention" as the determination to act in a certain way or to do a certain thing. Black's Law Dictionary, 727 (5th ed. 1979). "Obstruct" is defined as to hinder or prevent from progress or to impede. *Id.* at 972. These definitions suggest that "intentionally obstructing" requires some willful, deliberate and active participation in activities prejudicial to an employee's right to compensation.

■ The general rule that issues of intent are seldom appropriately resolved on summary judgment does not preclude summary disposition when evidence of state of mind is slender and entirely circumstantial. *Hahn v. Sargent*, 523 F.2d 461 (1 Cir.1975).

State of mind is difficult to prove and great circumspection is required where summary judgment is sought on an issue involving state of mind. * * * But that does not mean that a party against whom summary judgment is sought is entitled to a trial simply because he has asserted a cause of action to which state of mind is a material element. There must be some indication that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim.

*Id.* at 468.

Here the trial court found that

[o]nly a clear showing of such calculated and cold-blooded conduct [undertaken for

the express purpose of profiting by retention and investment of appellants' benefit monies for as long as the artifice remained undiscovered] could justify the imposition of the penalties prescribed in Minn.Stat. § 176.82.

See *Coleman v. American Universal Ins. Co.*, 86 Wis.2d 615, 273 N.W.2d 220, 222 (1979). The court found that appellants did not demonstrate that they could produce the requisite quantum of evidence to enable a reasonable finder of fact to conclude that respondent's conduct was both intentional and sufficiently outrageous to merit a penalty under § 176.82.

In *Zanmiller v. Aetna Technical Services*, 379 N.W.2d 612 (Minn.Ct.App.1985), an employee brought a § 176.82 action against the claims processor of a self-insured employer for alleged underpayment of annual inflation adjustment under Minn.Stat. § 176.645 (1984). This court stated that the claims processor's plausible interpretation of § 176.645 did not amount to an intentional obstruction of the employee's claim within the meaning of § 176.82. *Id.* at 614.

> [T]o give Minn.Stat. § 176.82 the application urged by appellant might be construed to provide a civil action in district court anytime an employee made a claim for worker's compensation which the employer or its insurance carrier, for whatever reason, contested.

*Id.*

California has developed an exception to the exclusivity of a statutory remedy in workers compensation cases *where the insurer's actions were egregious.* *Unruh v. Truck Insurance Exchange*, 7 Cal.App.3d 616, 102 Cal.Rptr. 815, 498 P.2d 1063, (1972). In *Everfield v. State Compensation Insurance Fund*, 115 Cal.App.3d 15, 171 Cal.Rptr. 164 (1981), the court held that allegations that the insurer consistently delayed payment of an award by the workers' compensation appeals board, and that this and other acts were done intentionally, deceitfully, fraudulently and in bad faith, were not sufficient to satisfy the *Unruh* exception. The court held that "reasons

for the delay * * * can be well inquired into by the board and where necessary discipline imposed." *Id.* 115 Cal.App.3d at 19, 171 Cal.Rptr. at 166. *See also Noe v. Travelers Insurance Co.*, 172 Cal.App.2d 731, 342 P.2d 976 (1959) (no punitive damages outside provisions of Workmen's Compensation Act were available in suit against insurance carrier for negligent delay in providing, or wanton misconduct in refusing, medical care).

In *Caplan v. Fireman's Fund Insurance Co.*, 175 Cal.App.3d 146, 220 Cal.Rptr. 549 (Cal.App. 2 Dist., 1985), the California Court of Appeal held that alleged unreasonable delay in paying workers' compensation benefits, and failure to notify the injured worker of an available rehabilitation program, "[fell] a country mile short of the type of 'outrageous and extreme' conduct contemplated by *Unruh.*" *Id.*, 175 Cal.App.3d at 148, 220 Cal.Rptr. at 549. This case is similar to *Caplan;* in both instances the insurer is accused of having failed to inform the injured worker of available benefits.

There are not many Minnesota cases interpreting Minn.Stat. § 176.82. In *Denisen v. Milwaukee Mutual Insurance Co.*, 360 N.W.2d 448 (Minn.Ct.App.1985), an opinion preceding *Zanmiller*, this court indicated the level of conduct that does not justify invoking the *Unruh* exception to statutory exclusivity.

> If plaintiffs could avoid the jurisdictional limitation merely by alleging that the insurer had improperly refused to pay, the *Unruh* exception would soon subsume the statutory mandate.

*Denisen*, 360 N.W.2d at 451.

The deposition of respondent's insurer contains evidence that may be sufficient to support the allegation that respondent intentionally withheld the information. Even if proven, however, this is not sufficient to invoke the triple penalty provision of Minn. Stat. § 176.82 absent a showing of some act that amounts to active malicious obstruction of appellants' seeking benefits.

## III.

*Res Judicata*

■ Respondent contends that the workers' compensation section's findings and order are res judicata with respect to the respondent's misconduct. The workers compensation section imposed penalties under § 176.225 for respondent's imposition of a 500 week cap on payment of permanent partial disability, but imposed no penalty for the delay.

In order for a matter to be res judicata and to preclude relitigation of the claim, the second suit must involve "the same parties, the same claims, and the same law as the one before, and [must constitute] a final adjudication." *Johansen v. Production Credit Association*, 378 N.W.2d 59, 61 (Minn.Ct.App.1985), citing *Campbell v. Glenwood Hills Hospitals, Inc.*, 273 Minn. 525, 531, 142 N.W.2d 255, 259 (1966).

In this case, respondent's argument that the issue of liability is res judicata does not convince us. This claim differs from appellant's claim at the workers' compensation section. Appellant invokes an entirely different statute here. This is a civil action, not strictly a workers' compensation claim, although there is some crossover proof. Appellant could not have requested the same relief at the workers compensation level.

## DECISION

The trial court properly found that Minn. Stat. § 176.82 did not apply to appellants' claim for respondent's failure to pay workers' compensation benefits. The trial court properly found that appellants did not demonstrate they could produce evidence to enable a reasonable finder of fact to conclude respondent's conduct constituted intentional obstruction under Minn.Stat. § 176.82 (1984). The workers' compensation division's holding that insurer's conduct did not warrant a penalty was not res judicata for the purpose of a claim brought under Minn.Stat. § 176.82 (1984).

Affirmed.