SUNRISE ELECTRIC, INC., Appellant,

v.

ZACHMAN HOMES, INC., et al., Andrew W. Wolf, et al., David C. Bell Investment Company, et al., Lake Eden Carriage Home Association, Respondents.

No. C1–87–2251.

Court of Appeals of Minnesota.

June 14, 1988.

David J. Meyers, Brenner, Workinger & Thompson, Minneapolis, for Sunrise Elec., Inc.

John F. Markert, Bloomington, for Zachman Homes, Inc., et al.

James Saboe, Inver Grove Heights, for Andrew W. Wolf, et al.

Daniel J. Biersdorf, Linda M. Tedford, Estes, Parsinen & Levy, P.A., Minneapolis, for David C. Bell Inv. Company, et al.

Elliott Knetsch, So. St. Paul, for Lake Eden Carriage Home Ass'n.

Heard, considered and decided by NIERENGARTEN, P.J., and LANSING and SCHUMACHER, JJ.

## OPINION

LANSING, Judge.

Sunrise Electric seeks enforcement of a mechanic's lien against property in a Lake Eden condominium development. Sunrise received partial payment of the lien amount

in the bankruptcy action of the developer, Zachman Homes. Sunrise now seeks to enforce the lien against property within the development which had been sold prior to the bankruptcy action. The trial court found the lien invalid, and we affirm.

## FACTS

Zachman Homes, Inc., is a developer and builder of residential housing units. On November 2, 1983, Zachman filed for relief under Chapter 11 of the Bankruptcy Code. The petition was later converted to a regular Chapter 7 bankruptcy. At the time Zachman filed the petition, it had under construction approximately 50 housing units in four housing developments: Lake Eden, Cinnamon Ridge, Fox Glen and Woodcliff. The mechanic's lien at issue in this case is one general lien for all of Sunrise's electrical work on residential units in the Lake Eden development.

The bankruptcy court established procedures which allowed Zachman to complete and sell the housing units under construction free from all liens. The sale proceeds from the units would be distributed first to suppliers and laborers who provided work and material after the date of the bankruptcy petition, then applied to construction and selling costs. Construction lenders, including Bell Investment Co., would receive balances owing on their construction mortgages with the proviso that if the court later determined that the pre-petition mechanics' liens were prior to the construction mortgages, the money would be paid back.

The principal claimants in the bankruptcy action agreed to submit sample cases to determine the relative rights of the creditors. The sample cases submitted for the Lake Eden development were units 42, 44, 46, 47 and 48. Although the record before this court does not disclose how these units were selected, all of the sample units were located in building F. Sunrise Electric claimed a lien of $45,530.48.

The bankruptcy court, in a November 30, 1984, order, held that because there were actual and visible beginnings of improvements preceding the recording of the mortgages, including Bell Investment's, the mortgages were subordinated to the mechanics' liens. To determine the amounts due each lien claimant, the court prorated each lien over all claimed units in the development. On appeal the federal district court affirmed the bankruptcy court order.

After this ruling, Sunrise moved in bankruptcy court for summary judgment on the issue of the validity and priority of its mechanic's lien claim against the remaining Lake Eden units subject to the bankruptcy action: one unit in building D and all units in building E. The bankruptcy court denied the motion for summary judgment. The court held that its November 1984 order established the priority of Sunrise's mechanic's lien over the mortgage of Bell Investment, but did not establish the validity of the lien. The court concluded that a fact issue remained on whether Sunrise's lien arose from a single general contract for the entire Lake Eden project or from a series of separate contracts which required separate mechanics' lien filings on each building or each unit.

On motion for reconsideration, the bankruptcy court reversed its position and entered summary judgment. The court stated that the issue of whether Zachman Homes and Sunrise had a general contract or separate contracts had not been raised or litigated, but concluded that the validity of Sunrise's liens was essential to the November 30, 1984, order and Bell Investment's failure to raise the issue collaterally estopped it from raising it now.[1]

After this ruling, the dispute between Sunrise and Bell Investment moved from

---

1. The reasoning of the bankruptcy court is not readily apparent. The order states that because the November 30, 1984, order determined that the lien was valid on five units, the lien could not be based on a separate contract for each unit. Although this reasoning would exclude a series of contracts for each unit, it does not exclude a series of contracts for each building because all of the units were located in building F. The court also alludes to its proration of lien monies on a unit basis across the entire project.

federal to state court. In September 1984 Sunrise filed a mechanic's lien action in Hennepin County against 189 defendants, primarily individual condominium owners and mortgagees, including Bell Investment. In its statement of the case and its arguments to the trial court, Sunrise narrowed its lien foreclosure to the non-bankruptcy property, buildings A, B, C and all but unit 29 in building D. These units had all been sold by Zachman prior to the filing of the bankruptcy petition. Sunrise limited its claim to $29,000—apparently the amount still owing after the recovery permitted in bankruptcy court.

Sunrise moved for summary judgment, arguing that the bankruptcy action decided the validity of Sunrise's lien and its priority over Bell Investment's mortgage and prevented relitigation of those issues between parties to the bankruptcy action and those in privity with them. The trial court denied the motion, finding that the bankruptcy court's orders did not have preclusive effect. The parties offered to submit the issue of the lien's validity on the written record, but the court scheduled a trial, noting that the remaining dispute—whether Sunrise had a single general contract or a series of contracts—would turn on the understanding and intent of the parties and was particularly subject to credibility determinations.

At trial the parties included Sunrise, various mortgagees including Bell Investment and various owners of the individual condominium units. They agreed that the sole issue was whether Sunrise's work was done under a general contract or a series of separate contracts.

The evidence included testimony from Keith Hesli of Sunrise Electric that Mike Zachman of Zachman Homes contacted him in 1982 to obtain a bid on the Lake Eden development. Zachman showed Hesli blueprints of four different types of units which would be built in the Lake Eden project. Hesli submitted a written bid for a price for each type of unit. Hesli testified that these unit prices took into account a discount because they were doing the work for the whole project. According to Hesli, Mike Zachman later called him and told him that Sunrise's bid was accepted and that Sunrise would be doing the work for the Lake Eden project. However, Hesli also testified that the contract was formalized the first day Sunrise showed up for work.

Sunrise began work on August 12, 1982. Except for the per-unit bids, Sunrise and Zachman had no written agreement. When buildings became ready for rough electrical work, Zachman called Sunrise and Sunrise sent workers to the job site. The same process was used when units were ready for finishing electrical work. Sunrise worked in more than one building at a time completing various stages of work, roughing in units at the same time they were finishing other units.

During 1983, Zachman stopped paying Sunrise and Sunrise stopped working. At that time, Sunrise was the only electrical contractor that had worked on the Lake Eden project. On October 7, 1983, Sunrise filed a single mechanic's lien on all the units on which it had worked in Lake Eden. The lien lists the units individually by building.

The trial court found that Sunrise's work in the Lake Eden development was not done pursuant to a general contract and consequently the lien was not valid on the units involved in the trial. Sunrise and the mortgagees and homeowners moved for amended findings and judgment. Sunrise's motion was denied and Sunrise appeals, asserting that the work performed in Lake Eden was done under one general contract

Again it is unclear why this would implicitly exclude a series of contracts.

Although the bankruptcy court based its holding on the doctrine of collateral estoppel, we agree with the state trial court's observation that the ruling of validity based on a failure to raise the issue must derive from an application of res judicata or alternatively law of the case, but is not an attribute of collateral estoppel.

and that the trial court erred in refusing to grant their earlier motion for summary judgment.

## ISSUES

1. Did the trial court err in refusing to give preclusive effect to the bankruptcy court's November 30, 1984, order?

2. Did the trial court err in finding that Sunrise's electrical work at Lake Eden was done pursuant to separate contracts rather than one general contract?

## ANALYSIS

### I

On appeal Sunrise renews its summary judgment claim that the federal court's decision in the bankruptcy action precludes the state court from considering the lien's validity. Although Sunrise does not specify whether this claim is based on the doctrine of res judicata or collateral estoppel, its arguments appear to be directed to the doctrine of res judicata.

Res judicata, or claim preclusion, bars a second suit for the same claim by parties or their privies. *Kaiser v. Northern States Power Co.,* 353 N.W.2d 899, 902 (Minn.1984). Res judicata applies when (1) there has been a final judgment on the merits, (2) the same cause of action is involved, and (3) the parties are identical or in privity. *Minneapolis Auto Parts Co. v. Minneapolis,* 739 F.2d 408, 409 (8th Cir. 1984) (applying Minnesota law).

The bankruptcy court's November 30, 1984, order determining the relative claims of Sunrise and Bell to the proceeds from the sale of units owned by Zachman was a final judgment. In interpreting this order, the bankruptcy court held that the issue of whether there was a general contract should have been raised and thus could not be raised at a subsequent proceeding in bankruptcy court. Because the doctrine of res judicata forecloses retrial not only of issues which were actually litigated, but every issue which might have been litigated, *Mattsen v. Packman,* 358 N.W.2d 48, 49 (Minn.1984), the first element required for the application of res judicata is satisfied.

Although the subsequent order of June 19, 1986, interpreted the order and extended it to additional units which had also been constructed under the supervision of the bankruptcy court, it was based on procedural grounds rather than on the merits and such decisions do not generally receive preclusive affect. *See Matter of Minneapolis Community Development Agency,* 359 N.W.2d 687, 690 (Minn.Ct.App. 1984).

The second element, which requires a unity between the causes of action, is not so readily satisfied. The trial court in the present action concluded that the claims were distinct, reasoning that the bankruptcy court determined the relative claims of Sunrise and Bell to the proceeds from the sale of units owned by Zachman and completed under the supervision of the bankruptcy court. The trial court further reasoned that the present action seeking enforcement of the claims against the remaining units which were owned by separate individuals and were not part of the bankruptcy action was a different cause of action.

Determining unity of claims is not an exact science. The traditional Minnesota test has been whether the same evidence will sustain both actions. *Amalgamated Meat Cutters & Butcher Workmen of North America v. Club 167, Inc.,* 295 Minn. 573, 575, 204 N.W.2d 820, 821 (1973); *Melady–Briggs Cattle Corp. v. Drovers State Bank,* 213 Minn. 304, 309, 6 N.W.2d 454, 457 (1942). More recently, alternative tests have been advanced. In *Johansen v. Production Credit Association of Marshall–Ivanhoe,* 378 N.W.2d 59, 61 (Minn.Ct. App.1985), this court applied the test of "whether the primary right and duty and the delict or wrong combined are the same in each action." And in *Anderson v. Werner Continental, Inc.,* 363 N.W.2d 332, 335

(Minn.Ct.App.1985), *pet. for rev. denied* (Minn. June 24, 1985), this court employed a transactional approach, focusing on whether the same operative nucleus of facts is alleged in support of both claims.[2]

In this case any of the three tests would likely yield the same result. In the present action the validity of the lien turns on whether the contract between Sunrise and Zachman was a general contract for the entire project or a series of contracts for specified buildings.[3] In comparing this to the former bankruptcy action, the cause of action is not easily stated because of the specialized purpose and jurisdiction of the bankruptcy court, *see* 11 U.S.C.A. § 105 (West Supp.1984), the equitable procedures employed by the court to sell the units which were under construction, and the undisclosed basis for the determination that validity was implicitly decided in its November 30 order.

Assuming that the first two problems do not defeat the unity of issues, the third problem remains: there is no apparent explanation why the bankruptcy court's determination that five units in building F are validly liened requires a finding that units in other buildings are validly liened. We have not been shown how the determination of the lien's validity as to one building necessarily implicates a finding that there was a general contract. If the bankruptcy court's second order is based on a stipulated procedure by which these units were to represent all units, including those in other buildings, this fact is not available in our incomplete record, and the responsibility for presenting an adequate record on appeal rests with Sunrise, the appellant.

Even if we determined that unity of actions existed, in order for res judicata to apply, we would also have to determine

that the third element had been met—that the parties in the bankruptcy action and the state court action were the same or in privity with each other. The analysis of this issue is also severely constrained by the record. Sunrise advances an argument that the true party in interest is the title insurance company and that all owners in this action are insured by the same company. The support for this assertion appears to be a statement at trial that "most of the home owners" were insured by the same title insurance company and that this same title insurance company also insured Bell Investment's construction mortgage. There is no indication that the homeowners represented in the litigation are only nominal parties. We also find unpersuasive Sunrise's argument on the application of privity based on a common insurer. On the record presented we cannot say the trial court abused its discretion in denying summary judgment based on res judicata.

Sunrise would fare no better under a collateral estoppel analysis. The basis for comparison under collateral estoppel is the litigated issue. Thus, preclusion requires that the issue was *actually litigated* in a prior proceeding. *See Lange v. City of Byron*, 255 N.W.2d 226, 228 (Minn.1977); *Hentschel v. Smith*, 278 Minn. 86, 93, 153 N.W.2d 199, 205 (1967); *see also* J. Friedenthal, et al., *supra*, and *Restatement (Second) of Judgments* § 27 (1982). The issue whether the parties had a general contract covering all the buildings, and thus whether Sunrise's lien was valid as to all of them, was not litigated in bankruptcy court, and the doctrine of collateral estoppel does not apply.

II

■ After a trial, the court found that the parties formed a contract on August

---

2. For a general discussion of the scope of claims or causes of action for purposes of res judicata, see J. Friedenthal, M. Kane and A. Miller, *Civil Procedure* § 14.4 (1985).

3. The trial court found that all work was completed on buildings A, B, C and D on March 30, 1983 and that Sunrise continued to work on buildings E and F until October 5, 1983. Sun-

rise filed and served its mechanic's lien on October 7, 1983. If the contract between Sunrise and Zachman was not one general contract covering all eight buildings but rather a series of contracts, its mechanic's lien was not timely filed and served as to any of the buildings involved in this action under Minn.Stat. § 514.08, subd. 1 (Supp.1983).

12, 1982, which specifically included work to be performed on at least the first two buildings constructed, but not specifically on all eight buildings. The court further found that Zachman was not obligated under the August 12, 1982 contract to complete condominiums on all eight building sites and that the contract price for the work performed by Sunrise was subject to renegotiation. The court concluded on these facts that the electrical work performed by Sunrise was not performed pursuant to one general contract, and therefore the mechanic's lien on the buildings involved in this action was invalid.

■ Sunrise contends that on appeal we should find as a matter of law that the contract between Zachman and Sunrise was one general contract for the entire development rather than a series of separate contracts. We are mindful that mechanic's lien laws are generally construed liberally in favor of lien claimants. *Polivka Logan Designers, Inc. v. Ende,* 312 Minn. 171, 176, 251 N.W.2d 851, 854 (1977), and that a substantial rather than technical view should be taken of the question whether a mechanic's lien claim is founded upon separate and independent contracts. *Northwestern Lumber and W. Co. v. Parker,* 118 Minn. 211, 214, 136 N.W. 855, 856 (1912). However, we believe that the nature and terms of the contract were factual issues which require deference to the trial court as the finder of fact.

Although there is evidence in the record which would tend to support a theory that the contract was one general agreement, the trial court's finding that it was not is supported by the evidence. Sunrise's emphasis on preliminary discussions between Hesli and Mike Zachman at the time of the bid ignores the trial court's finding, also based on Hesli's testimony, that the agreement was entered into on August 12 when Sunrise arrived to begin work on the first two buildings.

Although he asserted that his bid included a volume discount, Hesli also testified that he understood that Zachman was not contractually obligated to build all eight buildings and that their agreement did not provide for a price increase if all eight were not built. The trial court's finding is also supported by Hesli's testimony that Sunrise could renegotiate its prices if costs rose and James Zachman's testimony that construction financing precluded Zachman from entering into an initial contract covering all eight buildings.

The cases cited by Sunrise do not compel a different finding. Under *Carr–Cullen Co. v. Cooper,* 144 Minn. 380, 175 N.W. 696 (1920), the parties can enter into a single general contract for the construction of a series of houses if they so intend at the outset. However, the trial court found in this case that the original agreement included work to be performed on at least the first two buildings, but did not specifically include work on all eight buildings.

Similarly, in *Johnson v. Salter,* 70 Minn. 146, 72 N.W. 974 (1897), the parties' agreement that part of a single general contract was to be performed at the option of the owner did not preclude a finding that work on the optional building was done under a general contract. However, the scope of the option in *Johnson* was defined in the initial written contract, which admittedly covered all the buildings. *Id.* at 150, 72 N.W. at 974. *Johnson* thus does not require a finding that there was a single contract, and the trial court's finding that there was not is supported by evidence and not clearly erroneous.

## DECISION

The trial court did not abuse its discretion in denying summary judgment, and its findings on the nature of the underlying contract are not clearly erroneous.

Affirmed.