**Milo E. GLASS, et al., Plaintiffs,**

v.

**IDS FINANCIAL SERVICES, INC., IDS Life Insurance Company, and IDS Financial Corporation, Defendants.**

**Donald STEPHENS, et al., Plaintiffs,**

v.

**IDS FINANCIAL SERVICES, INC., IDS Life Insurance Company, and IDS Financial Corporation, Defendants.**

Civ. Nos. 4–89–76, 4–89–115.

United States District Court,
D. Minnesota,
Fourth Division.

Aug. 3, 1992.

---

Stephen J. Snyder, David P. Pearson, Laurie A. Knocke, Darron D. Knutson, Julie W. Schnell, and Winthrop & Weinstine, St. Paul, Minn., for plaintiffs.

John D. Levine, Janice Symchych, Michael J. Wahoske, Kathleen D. Sheehy, and Dorsey & Whitney, Minneapolis, Minn., for defendants.

Lloyd B. Zimmerman, E.E.O.C., Minneapolis, Minn., for intervenor-plaintiff.

## ORDER

DOTY, District Judge.

This matter is before the court on a motion for summary judgment by defendants IDS Financial Services, Inc., IDS Life Insurance Company and IDS Financial Corporation (hereinafter referred to collectively as "IDS") on the Age Discrimination in Employment Act ("ADEA")[1] claim of plaintiff C. Thomas Turner ("Turner"). Based on a review of the file and record herein, the court denies defendants' motion for summary judgment.

## BACKGROUND

Turner was the division manager of the Minneapolis division of IDS Financial Services, Inc. On February 4, 1987, IDS notified Turner of its intent to terminate his employment as of March 17, 1987. As a result of IDS's actions, Turner has been a party to two separate lawsuits. On January 8, 1988, Turner filed an individual cause of action in Minnesota state court, asserting claims of intentional infliction of emotional distress, breach of contract, defamation, and age and religious discrimination pursuant to the Minnesota Human Rights Act ("MHRA"), Minn.Stat. §§ 363.-01-.15. On February 3, 1989, he filed his consent to participate in the present case, a class action of thirty-two former division managers[2] who allege that IDS violated the ADEA by engaging in a pattern or practice of age discrimination.[3]

1. 29 U.S.C. §§ 621–34.

2. The court certified an opt-in class on September 27, 1989. By order dated May 2, 1990, Magistrate Judge Floyd E. Boline permitted the Equal Employment Opportunity Commission to intervene in the action. The background of this case is more fully set forth in the court's order of November 21, 1991. *Glass v. IDS Fin. Servs., Inc.,* 778 F.Supp. 1029 (D.Minn.1991).

3. In the present action, Turner also asserted claims for punitive damages, intentional infliction of emotional distress, breach of contract and violations of ERISA and Minn.Stat. § 181.-79. In two prior orders, this court granted IDS's motions for summary judgment on those claims. *See Glass v. IDS Fin. Servs., Inc.,* 778 F.Supp. 1029, 1085 (D.Minn.1991) (dismissing Turner's ERISA, Minn.Stat. § 181.79, punitive damages and intentional infliction of emotional

Turner filed his state court action more than 300 days after receiving notice of termination but less than 300 days after its effective date. At that time, the MHRA had a 300-day statute of limitations. Minn. Stat. § 363.06, subd. 3 (1986).[4] IDS moved for summary judgment on Turner's MHRA claims, contending they were time barred because he failed to commence his action within 300 days after receiving notice of termination.[5] The state trial court denied the motion, ruling that Turner's MHRA claims were timely filed because the limitations period did not begin to run until the effective date of his termination. *Turner v. IDS Financial Servs., Inc.*, 471 N.W.2d 105, 106 (Minn.1991). The state trial court subsequently granted IDS's motion to certify that issue.[6]

The Minnesota Court of Appeals affirmed the trial court's decision, determining that the date of discharge rather than the date of notice commences the limitation period. *Turner v. IDS Fin. Servs., Inc.*, 459 N.W.2d 143 (Minn.Ct.App.1990). The Minnesota Supreme Court reversed, holding that in discriminatory discharge cases the MHRA statute of limitations begins to run from the time that the employee receives "unequivocal, unconditional notice of termination." *Turner*, 471 N.W.2d at 108. The Minnesota Supreme Court applied its holding to bar Turner's claim, rejecting his argument that the decision should have only prospective effect. *Id.*

After the Minnesota Supreme Court's decision, IDS moved the state trial court to dismiss Turner's complaint with prejudice. Turner sought to dismiss without prejudice or in the alternative, to amend his state court complaint to assert an individual ADEA claim. Turner also asked the trial

court to reconsider the dismissal of his defamation, intentional infliction of emotional distress and punitive damage claims. The trial court denied Turner's motions, granted IDS's motion and ordered entry of judgment. On August 8, 1991, the state trial court entered final judgment with prejudice, dismissing Turner's MHRA claims as untimely.

IDS now moves for summary judgment, contending that Turner is barred from asserting his ADEA claim. Relying on 28 U.S.C. § 1738, IDS reasons that this court must give Turner's state court decision the same effect that Minnesota courts would, and that Minnesota's law of claim preclusion would prevent Turner from pursuing any claim, based on either state or federal law, arising out of his termination as division manager. Thus, IDS argues that the court must dismiss Turner's ADEA claim on the basis of res judicata.

## DISCUSSION

The full faith and credit statute provides that decisions of other courts:

> shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such state, Territory or Possession from which they are taken.

28 U.S.C. § 1738. Thus,

> [a] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.

*Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). The Eighth Circuit

distress claims); *Glass v. IDS Fin. Servs., Inc.*, Civ. No. 4-89-76, slip op at 5-6 (D.Minn. April 5, 1990) (dismissing Turner's breach of contract claim).

4. In 1988, the statute of limitations was extended to one year. Minn.Stat. § 363.06, subd. 3 (1988).

5. By order dated July 26, 1988, the state trial court dismissed Turner's breach of contract and defamation claims. On December 29, 1989, the state trial court granted IDS's motion for sum-

mary judgment on Turner's intentional infliction of emotional distress claim. Thus, after December 29, 1989, Turner's age and religious discrimination claims were the only claims remaining in his state court action.

6. Minnesota Rule of Civil Appellate Procedure 103.03(h) permits appeal of an order denying summary judgment if it presents an issue that is "important and doubtful". Turner's counsel did not oppose the motion to certify.

has determined that § 1738 applies to ADEA cases. *Nichols v. City of St. Louis*, 837 F.2d 833, 835 (8th Cir.1988). Thus, the court will apply Minnesota's law of claim preclusion to analyze IDS's motion. *See id.*

■ Minnesota follows the general rules of res judicata and collateral estoppel that are almost universally applicable. *See, e.g., National Farmers Union Property & Casualty Co. v. Fisher*, 284 F.2d 421, 425 (8th Cir.1960). Minnesota law sets forth three requirements for claim preclusion: (1) the parties must be identical or in privity; (2) there must be a final judgment on the merits; (3) involving the same cause of action. *Minneapolis Auto Parts Co. v. City of Minneapolis*, 739 F.2d 408, 409 (8th Cir.1984) (applying Minnesota law).

■ Examining each factor in turn, it is undisputed that Turner was a party to both proceedings, thus the first requirement is met.[7] In *Nitz v. Nitz*, the Minnesota Court of Appeals determined that a dismissal based on statute of limitations grounds constitutes a decision on the merits and thus, where the claims are substantially similar, precludes a second action brought under a different limitation period. 456 N.W.2d 450, 452 (Minn.Ct.App.1990). The Minnesota Supreme Court's ruling therefore constitutes a decision on the merits of Turner's MHRA claim.

■ To apply claim preclusion, the court must thus conclude that Turner's individual MHRA claim is the same or substantially similar to the ADEA claim in the present action. As the Minnesota Court of Appeals has observed, however: "[d]etermining unity of claims is not an exact science." *Sunrise Elec., Inc. v. Zachman Homes*, 425 N.W.2d 848, 851 (Minn.Ct.App.1988). Minnesota courts have also applied three different tests to evaluate the similarity between two claims for purposes of claim preclusion. *Id.* (discussing various cases applying the three tests). The court will examine each in turn to determine whether

Turner's claims are the same or substantially similar.

> The traditional Minnesota test has been whether the same evidence will sustain both actions.

*Id.* (citing *Amalgamated Meat Cutters & Butcher Workmen v. Club 167, Inc.*, 295 Minn. 573, 204 N.W.2d 820, 821 (1973); *Melady–Briggs Cattle Corp. v. Drovers State Bank*, 213 Minn. 304, 6 N.W.2d 454, 457 (1942)). Thus:

> [i]n determining whether two claims are the same, a court examines whether the same evidence will support both judgments.

*Graham v. Special Sch. Dist. No. 1*, 462 N.W.2d 78, 83 (Minn.Ct.App.1990) (citing *Melady–Briggs Cattle Corp.*, 6 N.W.2d at 457), *aff'd in part, rev'd in part on other grounds*, 472 N.W.2d 114 (Minn.1991). Applying that test, the court notes that in his state court action, Turner alleged age discrimination as a result of one action, his termination. The present case, however, presents a class action based on an alleged pattern and practice of age discrimination reflecting a broad range of employment actions involving many division managers over a period of years. In *Cooper v. Federal Reserve Bank*, the Supreme Court highlighted the significant differences between the two types of claims:

> The crucial difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination is manifest. The inquiry regarding an individual's claim is the reason for a particular employment decision, while 'at the liability stage of a pattern-or-practice trial the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decisionmaking.'

467 U.S. 867, 876, 104 S.Ct. 2794, 2799–800, 81 L.Ed.2d 718 (1984) (in a Title VII action, analyzing such claims for purposes of res judicata and quoting *Teamsters v. United States*, 431 U.S. 324, 360 n. 46, 97 S.Ct.

---

7. The EEOC contends, however, that it was not a party to the state court proceeding and is not in privity with Turner for purposes of determin-

ing the timeliness of the ADEA class action. The court will discuss this argument more fully *infra.*

1843, 1867 n. 46, 52 L.Ed.2d 396 (1977)).[8] Thus:

> the existence of a valid individual claim does not necessarily warrant the conclusion that the individual plaintiff may successfully maintain a class action. It is equally clear that a class plaintiff's attempt to prove the existence of a companywide policy, or even a consistent practice within a given department, may fail even though discrimination against one or two individuals has been proved.

*Id.* 467 U.S. at 877–78, 104 S.Ct. at 2800–01.[9] To successfully assert a class action, a claimant:

> must prove much more than the validity of his own claim ... [he must also prove] the additional inferences (1) that this discriminatory treatment is typical of petitioner's ... practices, (2) that petitioner's ... practices are motivated by a policy of ... discrimination that pervades petitioner's [company], or (3) that this policy of ... discrimination is reflected in petitioner's other employment practices.

*General Telephone Co. v. Falcon,* 457 U.S. 147, 157–58, 102 S.Ct. 2364, 2370–71, 72 L.Ed.2d 740 (1982) (Title VII action alleging ethnic discrimination in promotion practices). Thus, proof of the discrimination in the present case will require different evidence than proof of Turner's individual discharge claim.[10]

The burdens of proof also vary significantly between the two claims. If his state court action had been timely, Turner would have been required to prove his case by either introducing direct evidence of discrimination against him because of his age, or to rely on the *McDonnell Douglas* framework to establish a prima facie case of such discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). In the present action, Turner does not have to rely on the *McDonnell Douglas* framework or on evidence of age discrimination directed against him. Instead, he may rely on evidence of a pattern or practice of age discrimination to create a presumption that he was also a victim of that pattern or practice. *E.g., Roby v. St. Louis Southwestern Ry. Co.,* 775 F.2d 959, 963 (8th Cir.1985) (proof of a pattern or prac-

---

**8.** Although the court applied Minnesota's law of claim preclusion, the court looked to federal law to analyze the substance of the ADEA class claims for purposes of determining whether the state and federal claims were the same or substantially similar.

**9.** In *Cooper,* members of a class brought pursuant to Federal Rule of Civil Procedure 23, who "made no effort to exclude themselves from the class" lost a pattern and practice case tried in federal court. 467 U.S. at 871, 104 S.Ct. at 2797. After losing the class case, several class members filed individual suits in federal court. The Fourth Circuit held that the doctrine of res judicata precluded the class members from filing successive individual discrimination claims on the basis of the adverse class judgment. *Id.* at 873, 104 S.Ct. at 2798 (construing Fourth Circuit's opinion, *EEOC v. Federal Reserve Bank,* 698 F.2d 633 (4th Cir.1983)). The Supreme Court reversed, holding that although class members were precluded from relitigating the issue of whether a pattern and practice of discrimination existed, the conceptual differences between pattern and practice claims and individual claims was dispositive for the purpose of res judicata. Thus, individual class members who had tried their claims as class members were not barred from subsequently filing individual claims. *Id.,* 467 U.S. at 880–82, 104 S.Ct. at 2801–02.

The court also rejects IDS's effort to distinguish *Cooper* because Turner's individual case was resolved before the present class action whereas the converse was true in *Cooper.* In *Cooper,* the Supreme Court refused to bar plaintiffs' individual claims based on the significant differences between individual and class Title VII claims, not because the class claim had been resolved before the individual claims.

The court further concludes that IDS's reliance on *Sawiers v. Lee Data Corp.* is misplaced. Civ. No. 4–86–90 (D.Minn. March 10, 1987) (holding that plaintiff's Title VII cause of action is essentially the same as his state court claim under the MHRA). The court finds *Sawiers* distinguishable because it analyzed the similarities between two individual discrimination claims and did not compare an individual MHRA claim to a federal ADEA class action in which the EEOC intervened.

**10.** Although in the present action, Turner may choose to proffer evidence that IDS directly discriminated against him, he will not be required to do so if plaintiffs establish a pattern or practice of age discrimination and IDS fails to sustain its burden of persuasion concerning the nondiscriminatory reason for its actions toward Turner. *See infra.*

tice of age discrimination creates more than a procedural benefit, it establishes a presumption that a class member was a victim of age discrimination). The benefit of that presumption, which actually shifts the burden of persuasion to IDS, *e.g., Craik v. Minnesota State Univ. Bd.,* 731 F.2d 465, 470–01 (8th Cir.1984); *accord Loeb v. Textron, Inc.,* 600 F.2d 1003, 1017 n. 17 (1st Cir.1979), was absent from Turner's individual state court action.

■■■ The analysis of the timeliness of the two claims also involves different evidence. In Turner's state court action, the Minnesota Supreme Court determined the timeliness of Turner's claim under the MHRA by examining only one alleged discriminatory act, his discharge. *Turner,* 471 N.W.2d at 106–08. Turner's ADEA claims may, however, be timely filed on an entirely different basis: as a result of the EEOC's intervention, *see infra,* if he can piggyback on the class charge or if there exists a continuing violation that tolls the federal statute of limitations.[11] Turner was precluded, however, from conducting discovery or presenting any evidence of the existence of a pattern or practice of age discrimination. Failure to admit such evidence is reversible error in an ADEA case. *E.g., Estes v. Dick Smith Ford, Inc.,* 856 F.2d 1097, 1103–04 (8th Cir.1988); *Phillip v. ANR Freight Sys.,* 945 F.2d 1054, 1056 (8th Cir.1991).[12] Moreover, in cases involving a pattern and practice of discrimination, events occurring outside of the limitations period may be properly considered as long as at least one discriminatory event occurs within the limitations period. *E.g., Furr v. AT & T Technologies, Inc.,* 824 F.2d 1537, 1543 (10th Cir.1987) (ADEA case). The statute of limitations is also tolled in cases involving continuing violations. *E.g., EEOC v. Home Ins. Co.,* 553 F.Supp. 704, 711–12 (S.D.N.Y.1982) (tolling ADEA statute of limitations for EEOC action); *cf. International Bhd. of Elec. Workers Local 1439 v. Union Elec. Co.,* 761 F.2d 1257, 1258 n. 1 (8th Cir.1985) (pattern or practice of age discrimination in class action tolled ADEA charge-filing requirement); *Satz v. ITT Fin. Corp.,* 619 F.2d 738, 743–45 (8th Cir.1980) (continuing violation tolled charge-filing period for Title VII claim); *Sigurdson v. Isanti County,* 448 N.W.2d 62, 67–68 (Minn.1989) (tolling statute of limitations under the MHRA for gender discrimination claim). Thus, in the present case, evidence of continuing violations and a pattern or practice of age discrimination will be analyzed to determine whether plaintiffs' claims were timely. *Glass,* 778 F.Supp. at 1054–55;[13] *cf. Kirk v. Board of Educ.,* 811 F.2d 347, 353–55 (7th Cir.1987) (refusing to apply res judicata to Title VII counterclaim that could have been raised in state court action because decision in state court rested solely on state court's review of the powers of an arbitrator and the

---

11. The Supreme Court has recognized that shorter state statute of limitations periods cannot foreclose federal relief under the ADEA. *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979). In *Oscar Mayer,* the Supreme Court held that "[s]tate limitations periods cannot govern the efficacy of the federal remedy." *Id.* at 762, 99 S.Ct. at 2074. Thus, a federal ADEA cause of action may deemed timely even though the administrative claim was untimely filed, pursuant to state law, with the state agency. *E.g., Husch v. Szabo Food Serv.,* 851 F.2d 999, 1002 n. 6 (7th Cir. 1988) (state law defining the time period for filing claims with the appropriate state agency does not control the timeliness of the ADEA action; §§ 626(d) and 633(b) of the ADEA control the timeliness of such claims).

12. This court has previously determined that:

Plaintiff's allegations of a pattern of age discrimination play a major role in all of plaintiff's claims; to require each plaintiff to prove those allegations individually, as opposed to proffering the pattern or practice evidence just once in a representative action, would be an inefficient use of judicial resources.

*Glass,* 778 F.Supp. at 1081.

13. Thus, rather than merely presenting an issue of the preclusive effect of a prior state court determination, the present case presents a conflict between this court's rulings with respect to the timeliness of the federal claims, *see Glass,* 778 F.Supp. at 1037–46 (*Glass* charge piggybacking); *id.* at 1050–51 (EEOC timeliness); *id.* at 1051–55 (continuing violation doctrine); and a state court's ruling with respect to the timeliness of state law claims under state statute of limitations. The court thus concludes that redetermination of the timeliness issue is warranted because Turner had no opportunity to present pattern or practice evidence in his state court action.

Seventh Circuit concluded that the evidence necessary to resolve that state claim was "totally irrelevant" to the evidence necessary to support the Title VII claim); *Jalil v. Avdel Corp.*, 873 F.2d 701 (3d Cir.1989), *cert. denied*, 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990) (refusing to give state decision preclusive effect where state decision did not discuss Title VII issues at all). Based on the foregoing, the court concludes that under the same evidence test, Turner's state and federal claims are not the same or substantially similar for purposes of claim preclusion.

■ In other cases, the Minnesota courts have applied a "transactional approach, focusing on whether the same operative nucleus of facts is alleged in support of both claims." *Sunrise Elec.*, 425 N.W.2d at 852 (construing *Anderson v. Werner Continental, Inc.*, 363 N.W.2d 332, 335 (Minn.Ct. App.1985)). Applying the transactional approach, the court notes that although Turner's state and federal claims may rest on some of the same operative facts,[14] the present action encompasses a much broader nucleus of facts because it is a class action alleging a pattern and practice of age discrimination over an extended period of time based on a wide range of allegedly discriminatory actions towards numerous divisional managers. The court thus concludes that Turner's federal and state claims are not the same under this test.

■ Other Minnesota courts analyze "whether the primary right and duty, and the delict or wrong combined are the same in each action." *Johansen v. Production Credit Ass'n*, 378 N.W.2d 59, 61 (Minn.Ct. App.1985) (citing *Rhodes v. Jones*, 351 F.2d

884, 887 (8th Cir.1965) (citation omitted)). In *Johansen*, the Minnesota Court of Appeals determined that a federal case involving various federal statutory claims did not bar a subsequent state common law action. *Id.* at 61. In his state court action, Turner asserted a right arising solely under state statutory law and was permitted to present evidence concerning only one alleged wrong, his discharge.[15] In the federal action, however, he asserts a right arising from federal statutory law and a different legal wrong: he asserts a right as part of a class action for a series of ongoing wrongs flowing from a pattern of age discrimination. The court thus concludes that under this test, the state and federal claims present different rights and legal wrongs. *Bergeson v. United States Fidelity & Guar. Co.*, 398 N.W.2d 75, 80 (Minn.Ct. App.1986) (determining that claims were not the same for purposes of res judicata because plaintiff invoked "an entirely different statute" and was unable to get the same relief in the prior action), *aff'd on other grounds*, 414 N.W.2d 724 (Minn. 1987).

■ The EEOC's intervention in the present case also provides different legal rights and remedies than those present in Turner's state court action.[16] The EEOC is charged with a duty to represent the public's interest, and thus is afforded various procedural and substantive advantages in prosecuting claims of age discrimination. *See, e.g., EEOC v. Gilbarco, Inc.*, 615 F.2d 985, 988–90 (4th Cir.1980) (unlike individual claimants, the ADEA does not require the EEOC to file a complaint that names all aggrieved individuals); *cf. Harris v. Amoco Prod. Co.*, 768 F.2d 669, 682–83 (5th Cir.1985) (having properly intervened, the

14. As previously discussed, Turner may not be required to present evidence of direct discrimination against him if plaintiffs establish a pattern or practice of age discrimination and IDS fails to overcome the resulting presumption of discrimination against Turner as a member of that class.

15. Moreover, although Minnesota state courts sometimes construe the MHRA in conjunction with the ADEA, that does not transform Turner's individual MHRA claims into the same claim as the class ADEA claims for purposes of res judicata. *Cf. Carlson v. Independent School*

*Dist. No. 623*, 392 N.W.2d 216, 220–21 (Minn. 1986) (emphasizing the differences between Title VII and the MHRA despite the fact that many Minnesota cases relied on Title VII to construe the MHRA).

16. The EEOC asks the court to deny IDS's motion for summary judgment because IDS failed to bring a timely motion on the EEOC's complaint. The court does not reach this issue based on its determination that IDS's motion should be denied for the reasons set forth in this opinion.

EEOC had standing to maintain a Title VII suit within scope of original plaintiffs' claims even after those plaintiffs had settled their claims because of its charge to "vindicate the public interest"). For example, the timeliness of plaintiffs' claims will be judged by an entirely different standard as a result of the EEOC's intervention. *Glass*, 778 F.Supp. at 1051 (after intervening, the EEOC is not bound by individual ADEA charge-filing requirements); *cf. Marshall v. Chamberlain Mfg. Corp.*, 601 F.2d 100 (3d Cir.1979) (in a direct action, the EEOC is not required to follow charge-filing procedures required for individuals). Thus, the EEOC's role in this case presents another significant difference between the two claims. *Cf. Richardson v. School Bd.*, 297 Minn. 91, 210 N.W.2d 911, 916 (1973) (when commissioner of human rights asserts MHRA class action, those "rights can be no broader than the rights of the members of the class he represents").[17] Based on the foregoing, the court concludes that Turner's individual state law claim is not the same claim as the federal class action

claims under any of the tests,[18] and thus his present claim is not barred by claim preclusion.[19]

Accordingly, IT IS HEREBY ORDERED that defendants' motion for summary judgment on Turner's ADEA claim is denied.

---

17. The court notes that the ADEA, by permitting opt-in class actions, pattern and practice evidence and EEOC participation, may afford greater rights and remedies than the MHRA and that this may provide additional grounds to find that res judicata does not block Turner's federal age discrimination claim. *Cf. Kaiser v. Northern States Power Co.*, 353 N.W.2d 899, 903–04 (Minn.1984) (because employees asserted "broader rights to recovery than those asserted earlier by" employer, which had no right to assert such claims, employees' "claims for damages not compensable under workers' compensation" were not barred by res judicata); *Bergeson*, 398 N.W.2d at 80 (claims were not the same for purposes of res judicata because plaintiff invoked a different statute and was unable to get the same relief in the prior action); *Anderson v. Northwestern Nat'l Life Ins. Co.*, 480 N.W.2d 363, 366 (Minn.Ct.App.1992) (leaving open question of whether court would permit individual claimants to piggyback on another individual's properly filed MHRA charge).

18. The court thus determines that IDS's reliance on *Nichols* is misplaced. In *Nichols*, the Eighth Circuit held that plaintiff's ADEA claim was barred by issue rather than claim preclusion and thus did not address whether plaintiff's state and federal claims were the same cause of action. 837 F.2d at 835. Because the prior state court action determined that plaintiff was not qualified for position from which she was

discharged, the Eighth Circuit concluded that plaintiff could not successfully prove in a later ADEA action that her discharge was the result of age discrimination. *Id.* at 835–36.

The court further rejects IDS's reliance on *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). In *Kremer*, the Supreme Court gave a state court decision preclusive effect, barring a Title VII action where the alleged discriminatory acts were prohibited by both federal and state law, elements of the discrimination claims were virtually identical, and the employee could not successfully assert a Title VII claim consistent with the state's finding that he had not been terminated or rehired because of his age or religion. *Id.* at 480–82, 102 S.Ct. at 1896–98. The present case is readily distinguishable. The court further notes that *Kremer* was predicated on issue rather than claim preclusion, and thus did not hold that the employee's state employment discrimination and federal Title VII claims were the same claim.

The court similarly concludes that *Nitz* is distinguishable because it merely held that a decision on the timeliness of a claim barred the relitigation of the same or a substantially similar claim. 456 N.W.2d at 452.

19. Based on its determination that claim preclusion does not bar Turner's ADEA claim, the court does not address the parties' arguments concerning IDS's waiver of that defense.